558 A.2d 860

James HACKENBERG

v.

SEPTA and Pennsylvania Financial Responsibility Assigned Claims Plan and Travelers Insurance Company.

Appeal of PENNSYLVANIA FINANCIAL RESPONSIBILITY ASSIGNED CLAIMS PLAN and Travelers Insurance Company.

James HACKENBERG, Appellant,

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY and Pennsylvania Financial Responsibility Assigned Claims Plans and Travelers Insurance Company.

Superior Court of Pennsylvania.

Argued Jan. 20, 1989.

Filed May 3, 1989.

336

A. Richard Feldman, Philadelphia, for appellant (at 2033) and for PA Financial, appellee (at 2397).

Bruce G. Cassidy, Philadelphia, for Hackenberg, appellee (at 2033) and appellant (at 2397).

Alan C. Ostrow, Assistant City Solicitor, Philadelphia, amicus curiae.

Before CIRILLO, President Judge, and BECK and TAMILIA, JJ.

CIRILLO, President Judge:

This is an appeal from an order entered in the Court of Common Pleas of Philadelphia County denying the Travelers Insurance Company's motion for summary judgment and granting the cross-motion for summary judgment filed by the Southeastern Pennsylvania Transportation Authority (SEPTA). We affirm.

On January 13, 1986, appellant, James Hackenberg, a Philadelphia bus driver, was involved in an accident while driving a bus owned by his employer, SEPTA. The bus was hit in the rear by an uninsured motorist. SEPTA was at that time, and continues to be today, self-insured as to motor vehicle liability. As a result of the mishap, Hackenberg allegedly sustained serious injuries, for which he received workmen's compensation benefits.

On December 22, 1987, Hackenberg instituted a civil action against SEPTA, the Pennsylvania Financial Responsibility Assigned Claims Plan (Plan), and the Plan's assigned carrier, Travelers Insurance Company (Travelers). Hackenberg sought uninsured motorist benefits under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S. §§ 1701–1798 (Financial Responsibility Law). Both SEPTA and Travelers denied liability for Hackenberg's damages, and on April 13, 1988, Travelers and the Plan (collectively referred to as Travelers) filed a motion for summary judgment, alleging, *inter alia,* that SEPTA was solely liable to Hackenberg. SEPTA filed a response to Travelers' motion, as well as a cross-motion for summary judgment on its own behalf. Essentially, SEPTA asserted that section 303(a) of the Workmen's Compensation Act, 77 P.S. § 481(a), immunized SEPTA from any liability to Hackenberg other than workmen's compensation benefits.

On June 9, 1988, the Honorable Ethan Allen Doty granted SEPTA's cross-motion for summary judgment, and dismissed all claims against it. Judge Doty found, pursuant to our supreme court's recent pronouncement in *Lewis v. School District of Philadelphia,* 517 Pa. 461, 538 A.2d 862 (1988), that SEPTA was immune from liability for uninsured motorist benefits as a matter of law. Furthermore, since Hackenberg did not maintain private liability insurance coverage, Judge Doty reasoned that Travelers, as the assigned carrier under the Plan, would be the proper obligor for uninsured motorists benefits under the Financial Responsibility Law. Accordingly, Judge Doty denied Travelers' motion for summary judgment. This appeal followed.

The sole issue advanced for our review is whether an employee, who is injured in a motor vehicle accident in the scope of his employment, can be properly excluded from receiving uninsured motorist benefits from his self-insured employer by virtue of section 303(a) of the Workmen's Compensation Act.

Pennsylvania Rule of Civil Procedure 1035(b) provides, in pertinent part, that on a motion for summary judgment,

> [t]he judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Pa.R.C.P. 1035(b); *Dume v. Elkcom Co.*, 368 Pa.Super. 280, 533 A.2d 1063 (1987) *alloc. den.* 549 A.2d 915 (1988). When reviewing a trial court's imposition of summary judgment, we have stated:

> Summary judgment is made available by Pa.R.C.P. 1035 when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. To determine the absence of a genuine issue of material fact, we must view the evidence in the light most favorable to the non-moving party and any doubts must be resolved against the entry of judgment. In so doing, we accept as true all well-pleaded facts in appellant's pleadings and give appellant the benefit of all reasonable inferences to be drawn therefrom. Summary judgment is appropriate only in those cases which are clear and free from doubt.

*Bobb v. Kraybill*, 354 Pa.Super. 361, 364, 511 A.2d 1379, 1380 (1986) *alloc. den.* 513 Pa. 633, 520 A.2d 1384 (1987) (citations omitted). Thus, an appellate court is required to determine the existence of any genuine issues of material fact which the trial court may have overlooked. In so doing, we may reverse the trial court only where there has

been an error of law, or a clear or manifest abuse of discretion. *Lened Homes v. Department of Licenses and Inspections*, 386 Pa. 50, 123 A.2d 406 (1956); *Dume, supra; Peters Township School Auth. v. United States Fidelity & Guaranty Co.*, 78 Pa.Commw. 365, 467 A.2d 904 (1983). Applying these principles, we are faced with the resolution of whether the trial court properly concluded that no genuine issue of material fact existed and that the claim against SEPTA was barred as a matter of law.

Travelers maintains that Judge Doty "went astray by blindly following the result reached by the Supreme Court in *Lewis v. School District of Philadelphia*, 517 Pa. 461, 538 A.2d 862 (1988)." *Lewis*, it contends, dealt with a claim for uninsured motorist benefits under the old Uninsured Motorist Act, 40 P.S. § 2000, and not the Financial Responsibility Law. Travelers asserts that section 1735 of the Financial Responsibility Law, which was enacted ten years after section 303(a) of the Workmen's Compensation Act, embodied a conscious effort by our legislature to modify the exclusivity provision of our workmen's compensation law. Accordingly, Travelers contends that under the Financial Responsibility Law, SEPTA, as a self-insurer, is responsible for providing uninsured motorist benefits to its employees injured in motor vehicle accidents occurring in the course of their employment. This liability, Travelers states, is applicable regardless of whether SEPTA is also accountable for the payment of workmen's compensation benefits. We disagree, and cannot accept this interpretation of section 1735.

Pennsylvania is an industrialized state. In order to promote certainty in the legal affairs of Pennsylvania's industrial base, while at the same time protecting employees and their families from economic devastation arising from work-related injuries, our legislature formulated Pennsylvania's Workmen's Compensation Act. The Act was geared towards the assurance of quick, fair and certain compensation for employment-related injuries without requiring the complainants to resort to the courts for recovery. *See Poyser*

*v. Newman & Co.,* 514 Pa. 32, 522 A.2d 548 (1987); *Blouse v. Superior Mold Builders, Inc.,* 363 Pa.Super. 516, 518, 526 A.2d 798, 799 (1987).

The Act specifically delineates the coverage which it affords. Section 301(a) provides:

> Every employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence. . . .

77 P.S. § 431. Although this "no-fault" system of recovery applies equally to all employment-related injuries, the legislature determined that employers should not be accountable for those injuries intentionally inflicted by third persons, as a result of non-employment-related matters. This concept is embodied in section 301(c), which states:

> The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; *but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer*
> . . . .

77 P.S. § 411(1) (emphasis added). Aside from the above-referenced exception, the Act clearly sought to provide the injured worker with his or her exclusive remedy at law. In essence, the Act was based on a theory of trade-offs. On the one hand, the employer is forced to surrender the numerous defenses which might be available in an employee's action at common law. However, the injured employee's recourse is strictly confined to those remedies provided by the statute itself, thus providing the employer with some degree of certainty in its legal affairs. Section 303(a) integrates the exclusivity principle into our statutory scheme, and provides:

(a) *The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes,* his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 P.S. § 481 (emphasis added). Commenting upon this section of the Act, our supreme court has stated:

Section 303(a) of the Workmen's Compensation Act, like its predecessor, is a version of the historical *quid pro quo* employers received for being subjected to a no-fault system of compensation for worker injuries. That is, while the employer assumes liability without fault for a work-related injury, he is relieved of the possibility of a larger damage verdict in a common law action.... So strong is the principle of exclusivity we have held that it is a nonwaivable defense, even when not timely raised.

*Lewis,* 517 Pa. at 471, 538 A.2d at 867 (citations omitted); *see also* 2A A. Larson, *Workmen's Compensation Law,* § 65.11 (1987 ed.). In short, the exclusivity provision "bars tort actions flowing from *any* work-related injury." *Kline v. Arden H. Verner Co.,* 503 Pa. 251, 256, 469 A.2d 158, 160 (1983).

In *Lewis,* our supreme court was faced with the issue of whether employees of self-insureds could obtain uninsured motorist benefits from their employers for work-related vehicular accidents, despite the exclusivity provision provided by the Workmen's Compensation Act. One of the three appellants in the case, Jerry Lewis, was employed by the School District of Philadelphia as a bus driver. While driving a school bus in the course of his employment, Lewis was involved in an accident with an uninsured motorist. The school district was self-insured as to motor vehicle liability and as to workmen's compensation claims. Lewis submitted a workmen's compensation claim, which was subsequently paid by his employer. However, Lewis later

demanded that the school district pay him additional benefits pursuant to the Uninsured Motorist Act, 40 P.S. § 2000. The school district rejected Lewis' request for additional moneys, and he later petitioned the Court of Common Pleas of Philadelphia County for an order to compel his employer to arbitrate the matter. The trial court denied his petition, reasoning that, as against an employer, benefits paid under the Workmen's Compensation Act are an employee's exclusive monetary remedy for injury suffered in the course of employment. We affirmed, and the supreme court accepted allocatur to address the issue.

Chief Justice Nix, writing for the majority, reaffirmed the strength of the exclusivity of remedies concept embodied by section 303(a) of the Workmen's Compensation Act, and confirmed "the clear mandate of section 303(a) that benefits under the Workmen's Compensation Act shall be *'in place of any and all liability'* on the employer's part of a work injury." *Lewis,* 517 Pa. at 473, 538 A.2d at 868 (emphasis in original). In rejecting the requested recovery by the employee, the court stated:

[F]or us to adopt [an exception which would treat uninsured motorist benefits as being outside the scope of section 303(a) ], by embracing the fiction that a self-insured employer was being subjected to liability in some capacity other than that of employer, would require us to ignore an inescapable truth: that the employer, in paying uninsured motorist benefits, would be paying a worker for an injury sustained strictly in the course of employment. That reality cannot be pretended away. As to such injuries, section 303(a) of The Pennsylvania Workmen's Compensation Act provides that the compensation under that statute is the employer's exclusive liability, and that such liability is "in place of any and all other liability" on the employer's part.... The terms of section 303(a) do not leave room for the exception advocated by the instant appellants. Although numerous policy arguments have been raised in support of an exception

for uninsured motorist benefits, those arguments present considerations which must be directed to the legislature. 517 Pa. at 474–75, 538 A.2d at 868–69.

In the instant case, Travelers attempts to diminish the precedential value of *Lewis* by suggesting that it merely construed the interplay between the Workmen's Compensation Act and the old *Uninsured Motorist Act.* The reasoning utilized by Chief Justice Nix cannot be applied by analogy, Travelers argues, to the relationship between the exclusivity provision of the Workmen's Compensation Act, and the Financial Responsibility Law, which supposedly expressly addresses this scenario. In support of this argument, Travelers directs our attention to section 1735 of the Financial Responsibility Law, which reads:

> **§ 1735. Coverages unaffected by workers' compensation benefits**
>
> The coverages required by this subchapter shall not be made subject to an exclusion or reduction in amount because of any workers' compensation benefits payable as a result of the same injury.

75 Pa.C.S. § 1735. While at first glance section 1735 appears to be controlling, a thorough reading of the Financial Responsibility Law, in its entirety, negates this conclusion.

Section 1735, which is found in Subchapter C of the Financial Responsibility Law, 75 Pa.C.S. §§ 1731–1736, clearly prohibits a reduction or exclusion of "coverages required by this subchapter" because of any workers' compensation benefits payable on the same claim. The provisions of Subchapter C, however, are apparently directed solely to *insurance companies,* who deliver or issue *insurance policies* throughout the Commonwealth. In defining the scope and amount of the coverage afforded by Subchapter C, section 1731 expressly requires that both uninsured and underinsured motorist coverage appear in the "motor vehicle liability insurance *policy.*" 75 Pa.C.S. § 1731(a) (emphasis added). It is critical to recognize that self-insurers such as SEPTA do not issue insurance policies, as do insurance companies. Consequently, the preliminary lan-

guage set forth in section 1735, which states that "[t]he coverages *required by this subchapter* shall not be made subject to an exclusion or reduction . . ." limits this section's applicability to those entities who are controlled by Subchapter C—predominantly insurance *companies.* As a self-insurer, SEPTA's uninsurance coverage is required by Subchapter H, not Subchapter C. *See* 75 Pa.C.S. § 1787(a)(3).

Our legislature expressly provided separate definitions of "insurers" and "self-insurers" so that any provisions applying to insurers would not mistakenly be read to apply to self-insurers. *See* 75 Pa.C.S. § 1702. Section 1702 provides, in pertinent part:

**"Insurer" or "insurance company."** A motor vehicle liability insurer subject to the requirements of this chapter.

**"Self-insurer."** An entity providing benefits and qualified in the manner set forth in section 1787 (relating to self-insurance).

75 Pa.C.S. § 1702. Using these definitional dissimilarities, our lawmakers carefully tailored the Financial Responsibility Law into the various subchapters in an attempt to avoid the exact sort of discrepancy that has arisen in this action.

A plain reading of the statutory scheme in question, including the definitional section of the law, supports the conclusion that our parliamentarians intended that the mandates of Subchapter H, and not Subchapter C, would apply to self-insurers such as SEPTA. The distinguishing features between the provisions are readily cognizable, and are helpful in ascertaining the context in which they are invoked. Subchapter H, section 1787, entitled "Self-insurance," requires that self-insureds provide only uninsured motorist coverage, and not both underinsured and uninsured coverage as required by Subchapter C. Section 1787 also prohibits a claimant from stacking uninsured motorist benefits, whereas Subchapter C permits the stacking of uninsured and underinsured motorist coverages. Section 1791 requires insurance companies to offer underinsured, uninsured and bodily injury liability coverages up to at least

$100,000 per person and $300,000 per accident whereas Subchapter H requires self-insureds to provide only uninsured motorist and bodily injury liability coverages of $15,000 per person, and $30,000 per accident. Most importantly, Subchapter H makes no mention whatsoever of workers' compensation benefits with regard to self-insureds. We will presume, since the legislature chose not to include a similar workmen's compensation provision in Subchapter H, that it must have intended to prevent self-insurers from paying both workmen's compensation benefits *and* uninsured motorist benefits.

We also observe that, notwithstanding Travelers' laborious attempt to convince us that *Lewis* dealt only with the relationship between the Workmen's Compensation exclusivity provisions and the old Uninsured Motorist Act, the Uninsured Motorist Act remains viable and has not been repealed by our legislature. Thus, to the extent that *Lewis* delineated a relationship between the two, that relationship would still appear to exist and to be subject to the supreme court's interpretation as set forth in *Lewis*. In fact, the language found in section 1731 of the Financial Responsibility Law appears to be substantially similar to the mandates of the old Uninsured Motorist Act.

Having found no provision of the Financial Responsibility Law, relating to self-insureds, which expressly repeals the strong policy considerations underpinning the exclusivity clause of the Workmen's Compensation Act, we conclude that the reasoning espoused in *Lewis* is applicable, and Hackenberg's claim against SEPTA is barred as a matter of law. Viewing all the evidence proffered in the case in the light most favorable to Travelers, and resolving any doubts against entry of judgment, we conclude that Judge Doty properly determined that no genuine issue of material fact remained, and SEPTA was entitled to judgment as a matter of law.

Order affirmed.