

1997 Decisions

**Opinions of the United States Court of Appeals for the Third Circuit**

11-18-1997

# Travelers Indemnity v. DiBartolo

Precedential or Non-Precedential:

Docket
96-2083

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Travelers Indemnity v. DiBartolo" (1997). *1997 Decisions.* Paper 261.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/261

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 18, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-2083

TRAVELERS INDEMNITY COMPANY OF ILLINOIS,

v.

JOSEPH N. DIBARTOLO,

      Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
D.C. Civ. No. 96-6238

Argued: September 10, 1997

Before: MANSMANN, NYGAARD, Circuit Judges,
and BLOCH, District Judge.*

(Filed November 18, 1997)

      BRUCE MARTIN GINSBURG,
       ESQUIRE (ARGUED)
      JONATHAN J. SOBEL, ESQUIRE
      Ginsburg & Associates
      2112 Walnut Street
      Philadelphia, PA 19103

Attorneys for Appellant

_____

*Honorable Alan N. Bloch, United States District Judge for the Western
District of Pennsylvania, sitting by designation.

      CONRAD J.J. RADCLIFFE, ESQUIRE
       (ARGUED)
      Marshall, Dennehey, Warner,
       Coleman & Goggin
      1845 Walnut Street
      18th Floor
      Philadelphia, PA 19103-4797

      Attorney for Appellee

OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this appeal, we are asked to predict whether the Pennsylvania Supreme Court would permit an employee injured in an on-the-job automobile accident to recover from both workers' compensation as well as from an uninsured motorist plan that his employer voluntarily purchased. The district court held that workers' compensation was the employee's exclusive remedy. Shortly after that ruling, the Pennsylvania Superior Court held that state law did not bar an employee's recovery from both workers' compensation and an uninsured motorist plan. Because the Superior Court's reasoning is persuasive, we will reverse.

I.

In May of 1994, Joseph N. DiBartolo was injured while occupying an automobile owned by his employer, Knight-Ridder, Inc.1 At the time of the accident, DiBartolo was acting in the course and scope of his employment. Subsequently, DiBartolo recovered workers' compensation and medical benefits from Knight-Ridder's insurer, Travelers Indemnity Co. of Illinois. Thereafter, he sought uninsured motorist benefits under an automobile insurance policy issued by Travelers to Knight-Ridder, which had voluntarily purchased the policy. Travelers responded by bringing this action for declaratory judgment.

_____

1. The material facts are not in dispute.

2

Travelers asked the district court to hold that DiBartolo's recovery of workers' compensation benefits after an on-the-job automobile accident precluded his later recovery on the uninsured motorist plan purchased by his employer. In the alternative, Travelers asked the district court to hold that Knight-Ridder had waived uninsured motorist coverage in Pennsylvania. After a pre-trial conference, the district court instructed the parties to file motions solely on the issue of the exclusivity of workers' compensation in Pennsylvania. In its Amended Order of November 25, 1996, the district court granted Travelers' motion for summary judgment. The court did not issue an opinion, but it cited Ducjai v. Dennis, 636 A.2d 1130 (Pa. Super. Ct. 1994) (en banc), aff'd, 656 A.2d 102 (Pa. 1995), in its order. DiBartolo took a timely appeal.2

II.

A.

This appeal requires us to determine the effect of the Pennsylvania legislature's 1993 repeal of Section 17353 and Section 17374 of the Motor Vehicle Financial Responsibility Law (MVFRL). Travelers argues that the repeal of these sections of the MVFRL indicated a clear legislative intent. Indeed, when these statutes are read, they seem to have clearly authorized the collection of both workers'

_____

2. The district court properly exercised subject matter jurisdiction pursuant to 28 U.S.C. S 1332. Our appellate jurisdiction lies pursuant to 28 U.S.C. S 1291.

3. Section 1735 had provided that "[t]he coverage required by this subchapter [mandatory uninsured motorist coverage] shall not be made subject to an exclusion or reduction in amount because of any workers' compensation benefits payable as the result of the same injury." 75 Pa. Cons. Stat. S 1735 (repealed).

4. Section 1737 had provided that "[n]otwithstanding anything contained in the Act of June 2, 1915 (P.L. 736, No. 338), known as the Pennsylvania Workmen's Compensation Act, no employee who is otherwise eligible shall be precluded from recovery of uninsured or underinsured motorist benefits from an employer's motor vehicle policy under this chapter . . . ." 75 Pa. Cons. Stat. S 1737 (repealed).

compensation and uninsured motorist benefits. Therefore, the repeal of these statutes would seem to have unambiguously reinstated the general rule that workers' compensation is the exclusive remedy available to employees injured on the job. See 77 Pa. Cons. Stat. S 481(a).5

The Pennsylvania Supreme Court's decision in Hackenberg v. Southeastern Pa. Transp. Auth., 586 A.2d 879 (Pa. 1991), suggests, however, that Travelers' isolated, straightforward reading of Sections 1735 and 1737 is misguided. First, according to the Court in Hackenberg, Section 1737--the statute that, of the two, seemed to extend unequivocally to employees the privilege of receiving both workers' compensation and uninsured motorist benefits--never affected employers such as DiBartolo's (Knight-Ridder, Inc.) who voluntarily purchased uninsured motorist plans. As the Court noted in Hackenberg, Section 1737 was enacted several years after Section 1735. Id. at 880 n.3. Prior to the enactment of Section 1737, the Court held, Section 1735 did not authorize employees of self-

insured employers to receive both workers' compensation and uninsured motorist benefits. Id. at 885.

In its earlier resolution of Hackenberg, the Pennsylvania Superior Court had noted that state law differentiated between self-insured employers and employers who purchased uninsured motorist plans. Hackenberg v. SEPTA, 558 A.2d 860, 864 (Pa. Super. Ct. 1989). Under its view of the law, injured employees who had received workers' compensation benefits could also recover on uninsured motorist plans that had been purchased by their employers. Id. Nonetheless, injured employees were barred from recovering both types of benefits when their employers were self-insured. Id. The Supreme Court agreed with the Superior Court's analysis, holding that self-insured employers--in the absence of Section 1737--were under a different set of obligations than were employers who

_____

5. This statute, the exclusivity provision of the Workmen's Compensation Act, states that "[t]he liability of an employer under this Act shall be exclusive and in place of any and all other liability to such employes [sic]
. . . in any action at law or otherwise on account of any injury or death as defined. . . ." 77 Pa. Cons. Stat. S 481(a).

4

purchased plans. Hackenberg, 586 A.2d at 883-84. The clear implication of Hackenberg is that prior to the enactment of Section 1737, employees could receive workers' compensation and uninsured motorist benefits from employers' purchased plans. Id. at 883 (discussing insurance policies). If the Pennsylvania Supreme Court had thought the Superior Court erred in making the distinction that undergirded its opinion, surely the Supreme Court would have said so. It is clear, however, that the Supreme Court's majority accepted the distinction between self-insured employers and employers who purchased plans. See id. at 885-86 (Cappy, J., concurring and dissenting, arguing that the majority's distinction between self-insured and other employers was irrational and not dictated by law).

Therefore, we learn from Hackenberg that the ability of employees to recover both workers' compensation and uninsured motorist benefits via employers' purchased plans did not stem from Section 1737. Employees had that ability prior to Section 1737. Indeed, it may be that, if anything, Section 1737 was enacted to ensure that employees whose employers were self-insured would not be penalized by the distinction drawn in Hackenberg and other cases such as

Lewis v. School Dist. of Phila., 538 A.2d 862 (1988) (holding that employees of self-insured employers could not, under the pre-MVFRL Uninsured Motorist Act, collect uninsured motorist benefits). See also Hackenberg, 586 A.2d at 883 n.9 (speculating that the legislative purpose behind Section 1737 was to ensure that all employees be able to receive both workers' compensation and uninsured motorist benefits). In any event, as Section 1737 did not affect employers who purchased uninsured motorist plans, Hackenberg suggests that the repeal of Section 1737 could not have had any impact on employees such as DiBartolo.

In Hackenberg, the Pennsylvania Supreme Court also made clear that Section 1735 was not the source of the ability of employees to recover from employers' purchased uninsured motorists plans as well as from workers' compensation. There the Court specifically rejected a suggestion that Section 1735 was designed to ensure an employee's access to both workers' compensation and

5

uninsured motorist benefits. Hackenberg, 586 A.2d at 883 & n.9. Instead, the Court held, Section 1735 was a restriction on what insurers could include in their uninsured motorist plans--plans that employers were then required by law to have, in the absence of self-insurance. Id. at 883. Therefore, the repeal of Section 1735 was required by the legislature's decision to make uninsured motorist plans optional. If, as the Hackenberg opinion suggests, Section 1735 was not the source of an injured employee's recovery of both workers' compensation and uninsured motorist benefits, its repeal could not have precluded DiBartolo's recovery of both types of benefits.

B.

Despite its analysis in Hackenberg, the Supreme Court offered a different view of the legislative repeal of Sections 1735 and 1737 in Ducjai v. Dennis, 656 A.2d 102 (Pa. 1995). There an employee filed negligence actions against a co-worker and the driver of another vehicle involved in an on-the-job accident. Ducjai, 656 A.2d at 103. In sweeping language, the Superior Court had held "that worker's compensation benefits are the sole and exclusive remedy available to employees injured in a motor vehicle accident in the course and scope of their employment." Ducjai, 636 A.2d at 1131.

On appeal, the Supreme Court affirmed the Superior Court's holding. Ducjai, 656 A.2d at 107. It phrased the final result in much narrower terms, however, holding "that

an employee may not recover both workers' compensation benefits from her employer as well as damages at common law from her co-employee . . . when injured in an [on-the-job] automobile accident." Id. (emphasis added). Nevertheless, in the course of its opinion, the Supreme Court agreed with the Superior Court that the repeal of Sections 1735 and 1737 had greatly affected the ability of employees to collect from sources other than workers' compensation for on-the-job automobile accidents. Id. at 106. The Supreme Court approvingly cited the Superior Court's observation that "[t]he legislature has tried time and again to make it clear that worker's [sic] compensation benefits are to be the exclusive remedy for employment-

related injuries, save for those intentionally inflicted." Id. Indeed, the Supreme Court specifically suggested that the legislative repeal had effectively overturned Superior Court decisions--Chatham v. Aetna Life & Cas. Co. , 570 A.2d 509 (Pa. Super. Ct. 1989), and Ferry v. Liberty Mut. Ins. Co., 573 A.2d 610 (Pa. Super. Ct. 1990) -- which had permitted employees to recover both workers' compensation and uninsured motorist benefits. Ducjai, 656 A.2d at 106. In striking contrast to Hackenberg, Ducjai suggests that the repeal of Sections 1735 and 1737 should bar DiBartolo's recovery of both workers' compensation and uninsured motorist benefits.

C.

Although the pertinent observations in the Supreme Court's Ducjai holding were dicta,[6] the Court indicated its view that Pennsylvania law now completely precludes an employee's recovering both workers' compensation and uninsured motorist benefits. Despite Ducjai, two opinions of the Superior Court issued after the district court's ruling interpreted the legislative repeal of Sections 1735 and 1737 much differently. In Warner v. Continental/CNA Ins. Co., 688 A.2d 177, 179 (Pa. Super. Ct. 1996), allocatur denied, 698 A.2d 68 (Pa. 1997), the Superior Court held that an employee injured in an on-the-job automobile accident could collect both workers' compensation and underinsured motorist benefits. There the court concluded that the exclusivity provisions of the Workmen's Compensation Act ("WCA") could not, for several reasons, operate to bar claims on uninsured/underinsured motorist policies. First, the court noted that the WCA had always been interpreted to bar employees' claims for uninsured motorist benefits only from employers who were self-insured. Id. at 182. Employees' claims on uninsured

_____

6. As noted, Ducjai involved the issue of whether one employee is immune from a common-law suit for damages brought by another employee injured in the course of employment. Ducjai, 656 A.2d at 102-03. Therefore, the Court's discussion of uninsured motorist coverage was not necessary for its decision. The Superior Court soon noted that this language from the Supreme Court's opinion was dictum. Palmosina v. Laidlaw Transit Co., 664 A.2d 1038, 1041 (Pa. Super. Ct. 1995).

7

motorist policies purchased by the employer had not been barred by the WCA. Id.

Secondly, the court rejected the suggestion that the legislature's repeal of Sections 1735 and 1737 indicated an intent to bar recovery of both workers' compensation and uninsured motorist benefits. Id. at 182-83. Instead, the Superior Court observed that the repeal of Sections 1735 and 1737 had taken place alongside the legislature's repeal of the portion of Section 1720 that had previously prevented subrogation against a claimant's tort recovery by a workers' compensation insurance carrier. Id. at 183. According to the court, these repeals should be understood as part of a single plan:

> Thus, before the amendment, a claimant could not recover amounts paid or payable under workers' compensation and, balanced against that provision, a workers' compensation carrier had no right of subrogation for workers' compensation benefits. By contrast, after the 1993 amendments, a plaintiff 's recovery is not reduced by the amount of workers' compensation benefits, and the workers' compensation carrier has the right of subrogation for any benefits paid in connection with the action.

Id. (quoting Schroeder v. Schrader, 682 A.2d 1305 (Pa. Super. Ct. 1996)). This, of course, is a much different understanding of the legislature's intent than that expressed in Ducjai.

Finally, the Warner court noted that legislative intent must be especially clear for it to conclude the legislature had intended to forbid employers from buying optional uninsured/underinsured motorist policies for the benefit of employees. Warner, 688 A.2d at 183. The court noted that the Supreme Court has held that such fringe benefits are "voluntarily bargained for and have an independent contractual vitality." Id. at 184 (quoting Wagner v. National Indem. Co., 422 A.2d 1061, 1067 (Pa. 1980). See also Panichelli v. Liberty Mut. Ins. Group, 669 A.2d 930, 932-33

(Pa. 1996) (holding that an injured employee's recovery of workers' compensation as well as sick pay and social security benefits was not unlawful "double dipping").

8

Moreover, according to the Superior Court, a claim on a policy purchased by the employer is not a claim against the employer; therefore, the uninsured motorist carrier cannot "borrow" the employer's immunity from suit. Warner, 688 A.2d at 184 (quoting Boris v. Liberty Mut. Ins. Co., 515 A.2d 21, 24 (Pa. Super. Ct. 1986)).

The Superior Court did not discuss in Warner its prior Ducjai holding or the Supreme Court's affirmance, which contained the strong, pertinent dicta about uninsured motorist benefits. In a post-Warner case, however, the Superior Court narrowly read Ducjai as precluding only an employee's negligence action against a co-employee. Gardner v. Erie Ins. Co., 691 A.2d 459, 463-64 (Pa. Super. Ct. 1997). An action against the co-employee's uninsured motorist carrier, said the court, was not subject to the WCA's exclusivity provisions and was not precluded. Id. at 464. That was so because the injured employee's suit was not against the employer or any source attributable to the employer; instead, the suit was analogized to one against "a third-party tortfeasor's liability insurance." Id. See also id. at 464-65 (noting that a suit against even the employer's uninsured motorist carrier is not, under Warner, a suit against the employer). Under the Superior Court's analysis, as enunciated in Warner and Gardner,[7] there is no legal barrier to DiBartolo's receipt of both workers' compensation and uninsured motorist benefits.

III.

A.

As a federal court sitting in diversity, we must apply the substantive law as decided by the state's highest court.[8]

_____

7. The dissent repeatedly suggests that Warner is the only Superior Court case that is at odds with the dicta from Ducjai. It is clear from Gardner, however, that the Superior Court recognized its disagreement with the Supreme Court's dicta but concluded that its reasoning, first enunciated in Warner, was more sound.

8. The district court's interpretation of state law is subject to plenary review. Salve Regina College v. Russell, 499 U.S. 225, 239 (1991).

9

Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 & n.15 (3d Cir. 1996). Because the Pennsylvania Supreme Court has not directly addressed the issue before us now, we must forecast how the Supreme Court would resolve the issue. Clark v. Modern Group Ltd., 9 F.3d 321, 326 (3d Cir. 1993). Applicable decisions of the Superior Court must be accorded significant weight. Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991). The "carefully considered statement[s]" of the Supreme Court in dicta in Ducjai also inform our prediction. McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 662 n.21 (3d Cir. 1980). Although it is a close case, we are ultimately persuaded by the Superior Court's compelling reasoning in Warner.9

B.

First, we note with approval that the Warner court considered the larger context surrounding the repeal of Sections 1735 and 1737. In particular, the Superior Court saw the repeal of Section 1735 as directly related to the contemporaneous repeal of Section 1720. Warner, 688 A.2d at 183. Thus, the Superior Court understood the legislature to have been exchanging one comprehensive system for another. In the previous arrangement, a workers' compensation carrier had no right to subrogate against an employee's claim and the employee could not recover from the uninsured motorist carrier any amounts payable

_____

9. Citing McKenna, the dissent states that in making our prediction of state law we must examine "in order of priority: the decisional law of the highest state court in analogous cases; the dicta of that court; and to a lesser degree, the decisional law of lower state courts." The dissent, however, overstates its argument. McKenna does not hold that the dicta of a state's highest court must necessarily trump the better-reasoned decisions of the state's intermediate courts. Indeed, we note that McKenna explicitly warned that "a federal court should be circumspect in surrendering its own judgment concerning what the state law is on account of dicta." 622 F.2d at 662. The rule of McKenna is that we "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data.. . ." Id. at 663. McKenna provided no rigid hierarchy that requires us to enforce the Supreme Court's dicta in the face of a better-reasoned, subsequent decision of the Superior Court.

10

under workers' compensation. Id. In the new arrangement, the employee's recovery from the uninsured motorist carrier

is not to be reduced by the amount of any workers'
compensation benefits payable, but the workers'
compensation carrier is given the right of subrogation for
any benefits paid to the employee under workers'
compensation. Id.

According to the Warner court, the repeal of Sections
1735 and 1720 effected a single plan. Under the post-repeal
law, the injured employee is permitted to recover both
workers' compensation and uninsured motorist benefits,
including a possible recovery from each of these two
sources for the same injury. The collection by the employee
of the uninsured motorist benefits, however, merely creates
a fund against which the workers' compensation carrier can
exert a subrogation lien for amounts it paid the employee
for the already-recompensed injury. Id.; Gardner, 691 A.2d
at 465. Understood in this broader context, the repeal of
Section 1735--like the repeal of Section 1737--did not
affect the ability of employees to recover both workers'
compensation and uninsured motorist benefits. 10 Indeed,

_____

10. Travelers contends the Warner court misunderstood the significance
of the legislature's decision to allow workers' compensation carriers the
right of subrogation against a claimant's tort recovery. It suggests that
permitting the workers' compensation carrier to subrogate against the
motor vehicle insurer is irrational. Travelers would limit the workers'
compensation carrier's ability to subrogate to situations where a third-
party tortfeasor has injured the employee.

We do not see a difference between subrogating against a tortfeasor
and a motor vehicle insurer. See Gardner, 691 A.2d at 463-64. In both
instances, the workers' compensation carrier is trying to recover what it
already paid out as a result of harm to an employee caused by some
third party. There is no legal significance to whether that third party
was
an uninsured motorist or some other malefactor. If there is such
significance, Travelers has not pointed it out.

Here Travelers serves as both the workers' compensation carrier and
the motor vehicle insurer for DiBartolo's employer. In many
circumstances, however, one insurance company will not perform both
roles. We agree with DiBartolo that it is only Travelers' dual role that
makes it appear that DiBartolo wants to "rob Peter to pay Paul." In any
event, if Travelers finds the current arrangement economically inefficient
or unduly complicated, its remedy lies with the legislature.

11

the repeal of Section 1735 permitted the injured employee
to recover more from these sources, although the workers'
compensation carrier may ultimately be the beneficiary--by

the use of its subrogation lien--of any double recovery. See
Gardner, 691 A.2d at 466 (Hudock, J., concurring).

We note that the Superior Court's interpretation of
Section 1735 in Warner is consistent with the Supreme
Court's statement in Hackenberg that 1735 was only a
limitation on what kinds of policies uninsured motorist
carriers could write. Hackenberg, 586 A.2d at 883.
Travelers argues that Section 1735 actually authorized the
employee's recovery of both workers' compensation and
uninsured motorist benefits. This is not an outrageous
claim, given the Supreme Court's dicta in Ducjai that the
repeal of Sections 1735 and 1737 ended the recovery of
both types of benefits. Ducjai, 656 A.2d at 106. This
interpretation, however, is inconsistent with the Court's
prior treatment of Section 1735 in Hackenberg. Given this
unexplained inconsistency and the fact that the Supreme
Court did not have the issue directly before it in Ducjai (as
did the Supreme Court in Hackenberg and the Superior
Court in Warner), we are persuaded by the Superior Court's
analysis of the repeal of Sections 1735 and 1737.

Thus, we conclude that neither Section 1735 nor Section
1737 was the source of the ability of employees to collect
both workers' compensation and uninsured motorist
benefits. Although it is not clear when employees began to
be able to collect both types of benefits, it is clear that the
ability to collect both types was judicially recognized and
was independent of Sections 1735 and 1737. See, e.g.,
Chatham, 570 A.2d at 512 (Pa. Super. Ct. 1990), aff'd, 605
A.2d 329 (Pa. 1992) (noting that an employee could
apparently have collected both types of benefits even in the
absence of Section 1735). See also State Farm Ins. Cos. v.
Ridenour, 646 A.2d 1188, 1190-91 (Pa. Super. Ct. 1994)
(collecting cases). Given this case law11  and the

_____

11. Travelers argues that the law prior to the legislature's enactment of
Sections 1735 and 1737 did not permit an employee's recovery of both
workers' compensation and uninsured motorist benefits.

12

inapplicability of Sections 1735 and 1737, we view the
repeal of Sections 1735 and 1737 as irrelevant to the issue

_____

Travelers interprets Hackenberg as holding that no employee can
collect both workers' compensation and uninsured motorist benefits. As
we have noted, the Superior Court held in Hackenberg that only self-
insured employers are immune from providing uninsured motorist
benefits. See, e.g., Hackenberg, 586 A.2d at 885 (holding is limited to

"self-insured" employers); Hackenberg, 586 A.2d at 885-86 (Cappy, J., concurring and dissenting on the ground that the court's distinction between self-insured and other employers was irrational). Indeed, Hackenberg makes clear that neither Section 1735 nor Section 1737 can be fairly understood as the source of an employee's ability to recover both workers' compensation and uninsured motorist benefits. Id. at 883 & n.9.

In addition, Travelers argues that the appellate cases that have allowed an employee to recover both types of benefits have misinterpreted the Supreme Court's opinion in Selected Risks Ins. Co. v. Thompson, 552 A.2d 1382 (Pa. 1989). See also Ducjai, 656 A.2d at 106 (questioning the use of Selected Risks by the Superior Court). As Travelers correctly points out, Selected Risks involved an unusual fact pattern, where the disputed uninsured motorist plan could not fairly be said to be the employer's. Hackenberg, 586 A.2d at 882-83 n.8. To the extent the Superior Court has relied on Selected Risks, however, it has not strongly relied on a misapprehension that the disputed policy in Selected Risks was an employer's. In Chatham, 570 A.2d at 512, for instance, the Superior Court relied instead on the logic of Selected Risks (that workers'
compensation and uninsured motorist benefits do not provide for the same types of damages and that there is no public policy against employers acquiring policies that more fully cover employees)--not on a belief that Selected Risks was controlling. See also id. (noting that Selected Risks spoke to its issue only "in glancing terms"). The cases that
followed Chatham relied on it, not directly on Selected Risks. See, e.g., Ferry, 573 A.2d at 611.

In the end, Travelers' quibbles are not with the Superior Court's Warner decision but, instead, with the Supreme Court's own decision in Hackenberg, where it sanctioned a distinction between self-insured employers and employers who purchase uninsured motorist plans. 586 A.2d at 881 & n.4, 884-85. See also id., 586 A.2d at 885-86 (Cappy, J., concurring and dissenting). Although the Supreme Court seemed in Ducjai to have qualms about the Superior Court's reliance on Selected Risks, the Court did not repudiate its previous decision in Hackenberg. As Hackenberg and Warner more squarely presented the issue now before us, those holdings are more persuasive than the Ducjai dicta.

13

we must decide. See Warner, 688 A.2d at 183 (noting that "[i]n light of the prior case law which the legislature was well aware of when it enacted [the repeals], we are unable to conclude that the legislature intended that the [exclusivity] provisions of the WCA would preclude recovery"). To end the recovery of both types of benefits, the legislature would have to take clearer action than the silent repeal of inapplicable sections.

C.

We also find convincing the Superior Court's emphasis in Warner on the fact that uninsured motorist coverage is now optional, and we predict the Supreme Court would adopt the Superior Court's analysis. Because uninsured motorist coverage is no longer mandated by the state, the Warner court viewed an employer's voluntary purchase of such coverage as a decision to provide employees with a fringe benefit. Id. at 184. We agree. When viewed as a fringe benefit that employers provide their employees (or that employees demand as a condition of employment), uninsured motorist coverage cannot be subject to the exclusivity provisions of the WCA. Wagner, 422 A.2d at 1067 (the Supreme Court noting that an employer or insurance carrier is "precluded from asserting" immunity for fringe benefits because of their "independent contractual vitality").12 Since the coverage is purchased for the employee's benefit and not to protect the employer from any

_____

12. Travelers argues that the Supreme Court's decision in Wagner supports its contention that the law never permitted recovery of both workers' compensation and uninsured motorist benefits. That opinion, however, interpreted the state's No-Fault Motor Vehicle Insurance Act, which preceded the MVFRL. Wagner did hold that employees could not receive both types of benefits, but that holding was premised on the fact that the No-Fault Act mandated both no-fault and workers' compensation coverage. Wagner, 422 A.2d at 1067. As uninsured motorist coverage became optional as the result of legislative actions including the repeal of Section 1735, Wagner may counsel that uninsured motorist coverage is now a fringe benefit that can benefit employees because of its "independent contractual vitality." Id. In any event, case law interpreting the No-Fault Act is no longer controlling. Hackenberg, 586 A.2d at 884.

14

of its own wrongdoing, there is no immunity for the workers' compensation carrier to borrow from the employer. Warner, 688 A.2d at 184. Moreover, as the Supreme Court recently noted, an employee's collection of a fringe benefit does not "result in double dipping," the harm the exclusivity provision of the WCA is designed to prevent. Panichelli, 669 A.2d at 932.13

Travelers suggests that employers likely purchase uninsured motorist plans only to protect (i) their clients and customers who ride in company vehicles and (ii) their employees when they drive company vehicles outside the course and scope of their employment. While it is obvious that employers might well purchase uninsured motorist

plans for the reasons Travelers lists, there is no reason why employers might not also purchase plans to benefit their on-the-job employees. Indeed, employers may do so because workers' compensation covers only a small portion of the types of damages an injured worker might suffer. Selected Risks Ins. Co. v. Thompson, 552 A.2d 1382, 1388 (Pa. 1989); Chatham, 570 A.2d at 512. Uninsured motorist plans can cover pain and suffering, wage loss, and consequential damages that are unavailable under workers' compensation. Selected Risks, 552 A.2d at 1388. Travelers does not offer any explanation why Pennsylvania would wish to bar employers from attempting to shield their employees from all of the types of on-the-job injuries the employees might suffer. Since DiBartolo's employer voluntarily purchased uninsured motorist coverage, we are satisfied that this fact would cause the Supreme Court to view the insurance policy as a fringe benefit. As a fringe benefit, the policy has "independent contractual vitality," and DiBartolo's recovery under the policy is not barred by

_____

13. Indeed, in this regard, DiBartolo notes that he is not seeking benefits
for the injuries covered by workers' compensation; instead, he is seeking
coverage for the additional injuries he suffered, injuries that are covered
only by the uninsured motorist plan.

Even if DiBartolo received a "double recovery," the repeal of Section 1720 of the MVFRL mandates that the workers' compensation carrier would have a subrogation lien on any amounts paid the employee for any already-recompensed injury. Warner, 688 A.2d at 183.

15

the exclusivity provisions of the WCA. Wagner, 422 A.2d at 1067.

IV.

In this appeal, we are faced with a difficult choice. On one hand, there is the clear, recent dicta in Ducjai, suggesting the Supreme Court would view the repeal of Sections 1735 and 1737 as dispositive. On the other hand, there is the even more recent Superior Court opinion, Warner, that places the legislative repeal in a larger and much different context. We are persuaded by the Superior Court's opinion, both because of the depth of its analysis and because Warner is consistent with the Supreme Court's own discussion of the repealed sections in Hackenberg. We find particularly persuasive the Warner court's reasoning that uninsured motorist coverage is best viewed as a fringe

benefit now that uninsured motorist plans are optional.

Because we predict that the Pennsylvania Supreme Court would hold that Pennsylvania law does not preclude an employee's recovery under both worker's compensation and an employer's voluntarily-purchased uninsured motorist plan, we will reverse and remand this matter to the district court for further proceedings.

16

NYGAARD, Circuit Judge, dissenting.

The Pennsylvania Supreme Court addressed the issue before us in well-reasoned dicta: "the repeal of Sections 1735 and 1737 of the MVFRL in 1993 has assured that the double recovery . . . is no longer permitted." Ducjai v. Dennis, 656 A.2d 102 (Pa. 1995). The district court cited Ducjai in its order. I see no reason why this is not a conclusive statement of Pennsylvania law. Indeed, I suggest that to do otherwise does violence to a consensus reached by a majority of the Pennsylvania Supreme Court. I respectfully dissent.

DiBartolo argues that a single Pennsylvania Superior Court case is compelling, and should be the basis of our construction of state law despite the clear statement of the Pennsylvania Supreme Court in Ducjai. This conclusion is not supported by case law that dictates our obligations when reviewing a diversity case.

As a federal court sitting in diversity, we are bound to either follow the pronouncement of the state's highest court, or forecast its position if no holding directly addresses the issue before us. City of Philadelphia v. Lead Industries Assn. Inc., 994 F.2d 112, 119 (3d Cir. 1993); Clark v. Modern Group Ltd., 9 F.3d 321, 326 (3d Cir. 1993). Carefully considered, relevant statements by a state supreme court, even if technically dicta, provide a federal court with reliable indicia of how the state tribunal would rule on a particular question. Nolan v. Transocean Air Lines, 365 U.S. 293, 296, 81 S.Ct. 555, 557 (1961); McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 662 (3d Cir. 1980). The Pennsylvania Supreme Court has discussed the precise issue before us, so we need not speculate or forecast how it would hold on this issue.

The court in Ducjai discussed whether an employee can collect benefits under workers' compensation and uninsured motorist insurance in strongly-worded dicta that should be controlling. Ducjai, 656 A.2d at 106. Ducjai prohibited double recovery in the exact fact pattern

presented here.

DiBartolo relies upon Warner v. Continental/CNA
Insurance Co., 688 A.2d 177 (Pa. Super. Ct. 1996), to argue

that he can obtain benefits under workers' compensation
and uninsured driver benefits. Warner analyzes the same
fact pattern presented here. Warner's conclusion regarding
double recovery is at odds with the dicta in Ducjai; yet it
does not discuss Ducjai.

The Pennsylvania Supreme Court opted not to review
Warner. Our task remains to predict whether, in light of
Ducjai, the Pennsylvania Supreme Court would approve of
Warner's rationale. I think it would not.

DiBartolo contends that we should use Warner to
construe Pennsylvania law because it is a more persuasive
consideration of the effect of the repealed statutes. I
disagree, not for the substance of his argument, but
because our standard of review limits our interpretation of
Pennsylvania law. We cannot simply ignore the state
supreme court and cite one intermediate appellate court
case to the contrary.

The central conflict between Ducjai and Warner concerns
the effect of the legislature's repeal of two provisions of the
motor vehicle financial responsibility law. These two
provisions supported case law allowing an individual to
obtain worker's compensation and uninsured motorist
benefits for an on-the-job accident. See Chatham v. Aetna
Life & Cas. Co. 570 A.2d 509 (Pa. Super. Ct. 1989)(declined
to follow by Ducjai); Ferry v. Liberty Mut. Ins. Co., 573 A.2d
610 (Pa. Super. Ct. 1990)(same).

In Ducjai, the Pennsylvania Supreme Court concluded
that by repealing Sections 1735 and 1737, the
Pennsylvania legislature intended to preclude double
coverage and instead treat work-related car accidents like
all other employment-related accidents: compensable under
workers' compensation only. Ducjai, 656 A.2d at 106.
However, Warner held that exclusivity provisions of the
Worker's Compensation Act do not prevent a claimant from
recovering uninsured motorist benefits, despite the repeal
of the statutory provisions that would support this
argument. 688 A.2d at 183.

As a federal court sitting in diversity we predict the state
supreme court's position on an issue by examining, in
order of priority: the decisional law of the highest state

court in analogous cases; the dicta of that court; and to a lesser degree, the decisional law of lower state courts. McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 662 (3d Cir. 1980). Decisions of lower state courts should be accorded proper regard, but not conclusive effect in interpreting state law, especially when the highest court has already addressed the issue in dicta. Id.

In this case, the dicta in Ducjai should carry great weight. Ducjai is a recent case; there has been no subsequent change in the statute; and there are no indications that the court is about to abandon this view. See Cowgill v. Raymark Industries, Inc., 780 F.2d 324, 331 (3d Cir. 1985). We should only diverge from precedent with caution, and then only when we are given convincing evidence of a doctrinal trend that the highest state court is substantially certain to follow. W.A. Wright, Inc. v. KDI Sylvan Pools, Inc., 746 F.2d 215, 218 (3d Cir. 1984). I suggest that one lower state court case, even if it is well reasoned, does not constitute a trend. See Scotts African Union Methodist Protestant Church v. Conference of African Union First Colored Methodist Protestant Church, 98 F.3d 78, 92 (3d Cir. 1996) (five cases from lower appellate courts are sufficient to show the doctrinal trend required by McKenna).

In sum, the Pennsylvania Supreme Court decided the effect of the repeal of Sections 1735 and 1737 on double recovery in Ducjai. Even though it discussed the issue in dicta, it is a clear manifestation of the sentiments of the court regarding the issue in this case: the repeal of Sections 1735 and 1737 prevents an employee from recovering benefits from workers' compensation and an uninsured motorist policy. That is the precise issue in before us; therefore I would affirm.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit