479 A.2d 949

GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA, Appellant,

v.

Frances M. ZERANCE, Guardian of the Estate of Nicholas
A. Zerance, An Incompetent, Appellee.

Supreme Court of Pennsylvania.

Argued May 15, 1984.

Decided June 28, 1984.

Robert P. Reed, Harrisburg, for appellant.

Lee C. Swartz, C. Kent Price, Harrisburg, for appellee Frances M. Zerance.

Mary Jane Forbes, Harrisburg, for appellee Carl J. Berst, t/d/b/a Middletown East End Warehouse Co.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

LARSEN, Justice.

This appeal involves a declaratory judgment action filed by appellee, Frances M. Zerance, guardian of the estate of Nicholas A. Zerance (insured), seeking judicial construction of a group medical benefits insurance policy issued pursuant to a group plan by the appellant, Guardian Life Insurance Company of America (Guardian Life). The policy in question provided for, inter alia, medical and health benefits coverage for employees of Middletown East End Warehouse Company (Middletown) who qualified under the group plan. We are asked to construe the group insurance policy to determine whether the appellant properly termi-

nated the insured's disability benefit payments as of December 31, 1979. The controversy arose in the following background.

In 1974, Nicholas A. Zerance was an employee of Middletown. He was insured under the group insurance policy issued by Guardian Life. On February 16, 1974, the insured became disabled due to certain after-effects of surgery. As a result of the disability, he has required extensive medical and nursing care on a continuing basis. The medical and nursing expenses necessitated by his disability were covered under the Guardian Life group medical policy from February 16, 1974 until December 31, 1979.

In November, 1978, appellee, Frances M. Zerance, as guardian of the insured,[1] was informed by Middletown that the insurance coverage would be terminated on November 30, 1978. On November 30, 1978, Middletown cancelled its group policy with Guardian Life effective December 1, 1978. The appellant continued to pay medical and nursing expenses for the insured until December 31, 1979. At that time, pursuant to the terms of the policy, all benefits were terminated. The policy provisions under which benefit payments were discontinued provide as follows:

"Termination of Your Insurance.

The group policy provides that your insurance will terminate upon the earlier of: (a) The date the group policy terminates or is amended to terminate insurance on the class or classes of employees to which you belong or (b) The date your employment terminates. This means that the date you cease to be actively at work on a full time basis with your employer, except that under certain circumstances specified in the Group Policy, your employment may be deemed, for the purposes of the insurance, to continue for a limited period after such cessation. In addition, if you fail to make the required contribution, when due, for any benefits for which you are required to

1. The insured was declared incompetent on April 15, 1975.

contribute, such benefits will terminate at the end of the period for which you made the last required contribution.

'Coverage after Termination.

If this insurance terminates for any reason (other than for non-payment of premium or because of exhaustion of the total benefit after age 65) and on such date of termination you or your dependent are totally disabled and under the care of a physician, coverage pertaining solely to the injury or sickness which caused the total disability will be extended during the uninterrupted continuance of such total disability subject to all limitations and provisions of this major medical expense coverage. Covered charges which would otherwise be payable for complications of pregnancy shall also be paid after termination of insurance provided the pregnancy had its inception prior to the date of the termination of insurance.

"This extension of insurance shall terminate on the earliest of the following occurrences: (a) The date these benefits are replaced by another plan providing similar benefits (other than a group policy issued by the Guardian) and under which you or your dependent are a member of the classes eligible; (b) The date total disability ends but in no event beyond the last day of the calendar year next following the calendar year in which your insurance terminated."

The trial court, treating the case as a non-jury civil action, received evidence and concluded that the cancellation of the group insurance was effective and binding on the insured. A verdict was entered in favor of Guardian Life.[2] Appellee's exceptions were denied and judgment was entered in accordance with the verdict.[3] On appeal, the Superior

---

2. On November 13, 1980, a verdict was entered in favor of Guardian Life Insurance Company of America and Carl J. Berst, t/d/b/a Middletown East End Warehouse Company and against Frances M. Zerance, Guardian of the Estate of Nicholas A. Zerance, an Incompetent.

3. By order dated November 5, 1981, exceptions filed by the appellee were denied. By order dated November 10, 1981, the action against

Court reversed, holding that the insured's right to the payment of benefits was vested and the termination provision of the policy may not be construed to divest that right.[4] For the reasons that follow, we reverse the order of the Superior Court [5] and hold that the termination provisions of the Guardian Life group insurance contract are valid and the insured is bound by the language of the policy.

■■■ Generally, in group insurance policies, the insurance carrier and the employer are the primary contracting parties and the rights of an insured employee are no greater than as provided by the terms of the policy. *Brown v. Carnegie-Illinois Steel Corp.*, 168 Pa.Super. 380, 77 A.2d 655 (1951). Where it is consistent with the provisions of the policy, and notice of the intended cancellation is given to the insured, the employer may cancel the policy and thereby terminate the coverage of the individual employees.[6]

The appellee argues that the insured's right to benefits under the Guardian Life group policy fully vested at the time he became disabled, and the subsequent cancellation of the policy cannot divest that right. The appellee relies on

Middletown East End Warehouse Company was discontinued with prejudice.

4. 314 Pa.Super. 529, 461 A.2d 283 (1983).

5. On June 3, 1983, the Superior Court entered the following:
   "On Consideration Whereof it is now hereby ordered and adjudged by this Court that the Judgment of the Court of Common Pleas of Dauphin County in favor of the Appellee, Guardian Life is reversed. Judgment entered in favor of the Appellant for the balance of the two hundred fifty thousand dollars ($250,000.00) of disability benefits."
   On August 15, 1983, the Superior Court entered the following Amended Order:
   "Accordingly, we hold that the judgment in favor of the appellee, Guardian Life, is reversed. Appellant is entitled to have the expense covered by the disability benefits paid until the Two Hundred Fifty Thousand Dollar ($250,000.00) major medical allowance is exhausted. We remand to the lower court to determine that covered expenses have been incurred by the appellant for her husband since December 31, 1979."

6. *See: Poch v. Equitable Life Assurance Society of United States,* 343 Pa. 119, 22 A.2d 590 (1941).

*Turley v. John Hancock Mutual Life Insurance Company,* 315 Pa. 245, 173 A. 163 (1934) as controlling this case. Appellee's reliance on *Turley* is ill-founded.

In *Turley,* the insured died and his widow made a claim for a $1,000.00 insurance benefit under the terms of a group policy. The group insurance provided a death benefit payable in a lump sum in the event of death to the named beneficiary. The policy also provided:

"In the event of total and permanent disability, occurring before the age of 60, .... the .... insurance .... will become payable to the member himself in a single sum."

If total and permanent disability occurs after the age of 60, the insurance will be paid only when death occurs."
*Id.,* 315 Pa. at 247, 173 A. at 164. The insured became totally and permanently disabled after the age of 60 and subsequently died. The only defense raised to the widow's suit was that the insured had been discharged from his employment prior to his death and he failed to convert the insurance.[7] The defense concluded that because of the insured's discharge and his failure to convert, there was no liability under the policy. The question before the court then was whether the discharge affected the insured's rights as urged by the defendants. In upholding Turley's widow's right to the insurance benefit, we said:

Undoubtedly this contention would be sound had not a member's substantive right prior thereto become fixed. Turley became totally and permanently disabled when he was a member of the association and an employee of the company. He was unable to continue his employment. When that condition arose he became entitled to the benefit from the insurance to be paid to his beneficiary at death. His rights became vested. True, the benefit was not to be enjoyed until death, but his beneficiary was then

7. The policy provided that the insurance terminated upon termination of membership in the employees' association unless the insured elected to continue the coverage under the conversion privilege contained in the contract. (When Turley was discharged from his employment, his membership in the Employee's Association terminated).

to receive it. Rights are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. Turley was not able to work after being disabled, of course; his rights were fixed and determined ... when he was forced to leave his work because of disability. It was not the intent and purpose of the "Plan of Protection" to oust a man from the association, as well as from the company, who had become permanently disabled after he was 60. The "Plan of Protection" distinctly says otherwise."

*Id.*, 315 Pa. at 249-250, 173 A. at 165. The insurance contract in *Turley* provided that when an insured became totally and permanently disabled, a lump sum benefit vested. The time when payment of that benefit was due depended upon the age of the disabled insured. If the insured was under 60 years of age payment was due immediately to the insured himself. If the insured was over the age of 60 then payment was due upon his death. The total and permanent disability of the insured activated the insurer's obligation to pay the lump sum benefit and vested the insured's right to receive it. Under the terms of the policy, this obligation of the insurer and right of the insured was not dependent upon continuation of the insurance contract.

The issue in the case *sub judice* goes beyond the question of whether the insured's right to benefit payments became vested when he suffered his disability. Indeed, subject to the terms of the policy, the disability of the insured activated his right to receive reimbursement for necessary medical expenses as such expenses were incurred. The question here is whether that right can be terminated by cancellation of the policy.

The clear provisions of the termination clause in question were part of the insurance contract from its inception. Payment of medical benefits to a disabled insured was specifically subject to those provisions. The insured's right to benefit payments can rise no higher than as provid-

ed by the terms of the policy. Under the policy, cancellation extinguished the right to benefits, subject to the provisions extending benefits in particular cases. When the insurance terminated for any reason other than non-payment of premium or exhaustion of benefits, the policy provided for "coverage after termination" which extended the insurance coverage until, "the date total disability ends but in no event beyond the last day of the calendar year next following the calendar year in which [the] insurance terminated."[8] Where the policy language is unambiguous, a court cannot adopt a construction which conflicts with the clear meaning of the language. *Patton v. Patton*, 413 Pa. 566, 198 A.2d 578 (1964). Language in a policy that is clear cannot be interpreted to mean other than what it plainly says. *Judge v. Prudential Insurance Co.*, 321 Pa. 454, 184 A. 543 (1936). The language in the policy in question is clear and unambiguous and must be enforced as written.

The appellant, Guardian Life followed the policy provisions to the letter, providing benefits from the date of disability until December 31, 1979—the last day of the calendar year which followed the year in which the insurance was cancelled. The appellee argues that the appellant is liable for the payment of benefits until the policy limit of $250,000.00 is exhausted. This monetary limitation is, however, subject to the termination provisions of the insurance contract. The appellant was liable for benefit payments up to $250,000.00 or until the right to benefits was otherwise terminated.[9] Here, the right to benefits was otherwise terminated by the cancellation of the policy. We may not rewrite the insurance contract, under the guise of judicial interpretation, to expand the coverage beyond that as provided in the policy.

8. *See:* "Coverage After Termination" clause set forth, supra.

9. The Guardian Life Group policy provided:
"Maximum amount payable under major medical expenses for each sickness or injury—$250,000.00.
"Maximum amount payable under major medical expense for all sicknesses and injuries to those age 65 and over—$250,000.00."

■ The appellee next argues that if the policy must be construed as terminating the insured's benefits following cancellation of the contract, then the termination provisions are void as against public policy. The provisions in question specifically provide a qualified insured with insurance coverage for a reasonable time after the policy terminates. We can discern no public policy that forbids such provisions.

"Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest."

*Muschany v. United States,* 324 U.S. 49, 65 S.Ct. 442, 89 L.Ed. 744 (1945). In *Mamlin v. Genoe,* 340 Pa. 320, 17 A.2d 407, 409 (1941), Justice Stern, writing for this Court, stated:

"It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unaminity of opinion in regard to it, that a court may constitute itself the voice of the community in [declaring that policy to be against public policy]."

We find no such unaminity of opinion against the policy terms challenged in this case. The termination provisions are not obviously against the public health, safety, morals or welfare of the people.

"Only in the clearest of cases ... may a court make an alleged public policy the basis of judicial decision." *Id.,* 340 Pa. at 409, 17 A.2d at 409. The provisions in question are lawful and not contrary to any public policy of Pennsylvania.

Finally, the appellee argues that the appellant should be estopped from denying coverage until the policy limit of $250,000.00 is reached. Appellee bases her estoppel argument on a memo dated June 26, 1974 from Middletown to appellee and the insured informing them of the coverage under the policy. The memo was based upon information received from one Joan Masny, an agent of Guardian Life. The memo advised that expenses for doctor visits, drugs, registered nurse, hospital bed, wheel chair, crutches, walkers, ambulance service and physical therapy were covered up to $250,000.00 without limit as to the number of days.

Appellee's contention is that because the memo states that the expense items set forth would be covered up to the policy limit, the appellant is estopped from denying coverage until that limit is exhausted.

"[E]stoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. In this situation, the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, aver a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct or statements." (citations omitted)

*Northwestern National Bank v. Commonwealth,* 345 Pa. 192, 27 A.2d 20 (1942).

"The essential elements of estoppel are an inducement by the party sought to be estopped to the party who asserts the estoppel to believe certain facts to exist, and reliance by the party asserting the estoppel on that belief."

*Sabino v. Junio,* 441 Pa. 222, 272 A.2d 508 (1971).

■ In the instant case, the appellee asserts that the appellant, by the memo of June 26, 1974, induced the appellee to believe the insured's medical expenses would be covered up to the policy limit of $250,000.00, and that she and the insured justifiably relied upon that belief to her and the insured's prejudices. Accordingly, the argument goes on, the appellant should be estopped from denying payment of benefits up to the stated policy limit. The flaw in appellee's argument is that there is no evidence establishing the essential element of prejudicial reliance on the part of the appellee or the insured. The memo allegedly relied upon, written in response to a request made by appellee, merely informs appellee of the coverage under the policy. That coverage, of course, was subject to all of the terms of

the policy, including the termination provisions. When the memo was sent to the appellee the insured was already disabled and there is no evidence of any action taken or omitted by appellee or the insured in reliance on the information contained in the memo. The appellee did testify that because of the benefits outlined in the memo she continued her employment. She stated that the benefits enabled her to remain employed and have the insured at home under the care of a private nurse. Without the benefits she could not have afforded this in-home care. We find no prejudicial reliance on these facts.

The order of the Superior Court is reversed and judgment of the trial court is reinstated.