**Frank D. HELLER and Beverly A. Heller, husband and wife**

v.

**PENNSYLVANIA LEAGUE OF CITIES AND MUNICIPALITIES t/d/b/a Penn Prime Trust a/k/a Pennsylvania Pooled Risk Insurance for Municipal Entities, Appellants.**

Commonwealth Court of Pennsylvania.

Argued May 6, 2008.

Decided June 4, 2008.

Reargument Denied July 15, 2008.

Brian P. Gabriel, Pittsburgh, for appellants.

No appearance entered on behalf of appellees.

BEFORE: FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

The Pennsylvania Leagues of Cities and Municipalities, doing business as Penn

Prime Trust (Penn PRIME), a municipal insurer, appeals an order of the Court of Common Pleas of Venango County that granted a motion for summary judgment filed by Frank and Beverly Heller in their declaratory judgment action seeking a determination from the trial court that a provision in Penn PRIME's insurance agreement with Sugarcreek Borough that excluded from its underinsured motorist coverage (UIM) claims by persons who would be otherwise eligible for recovery under the policy but for their eligibility for worker's compensation benefits violates public policy.[1] Penn PRIME challenges the trial court's holding that this policy exclusion of UIM benefits for persons eligible for worker's compensation benefits violates public policy. The provision at issue, found in the part of the policy relating to underinsured and uninsured motorists, V, B(3)(e), states as follows:

    3. Exclusions.

    This coverage does not apply to:

    . . .

    (e) Any claim by anyone eligible for workers compensation benefits that are the statutory obligation of the Member.

■ Penn PRIME raises the following issues: (1) Whether the trial court erred in concluding that the UIM exclusion violates public policy where the legislature chose not to mandate such benefits and the exclusion furthers the dominant public policy of cost containment; and (2) Whether the trial court erred in relying upon cases that do not address public policy considerations and by failing to recognize the significance of amendments to the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1701–1799.7, and Supreme Court

precedent pertaining to public policy considerations.[2]

The facts pertinent to our review are not disputed and can be summarized as follows. Frank Heller was injured in an automobile accident during the course of his employment as a police officer for Sugarcreek Borough. Heller obtained a maximum recovery of $25,000 from the other driver, and has notified his own personal insurer of a potential UIM claim. He has also received medical expenses and two-thirds of his pay through worker's compensation benefits. The Borough pays Heller the remainder of his salary. Heller sought UIM benefits from the Borough under its policy with Penn PRIME. As noted above, Penn PRIME denied coverage based upon Section V, B(3)(e) of the policy, which excludes such coverage under the facts presented. The parties agreed that the provision applies to the facts, but Heller argued before the trial court that the provision violates public policy and sought a declaration to that effect and an order voiding the provision on that basis.

The trial court first recognized that a repealed section of the MVFRL, 75 Pa. C.S. § 1735, prohibited insurance companies from excluding UIM benefits with regard to persons receiving worker's compensation benefits. The General Assembly repealed that provision in 1993 by the Act of July 2, 1993, P.L. 190, also known as Act 44. The Supreme Court considered that provision in *Selected Risks Insurance Co. v. Thompson*, 520 Pa. 130, 552 A.2d 1382 (1989). In that case, an insurance policy covered six vehicles owned and operated by a municipal unincorporated volunteer

---

1. The trial court also denied a cross-motion for summary judgment filed by Penn PRIME.

2. This Court's standard of review of a trial court's granting of a motion for summary judgment is limited to considering whether

the trial court erred as a matter of law or committed an abuse of discretion. *Sicuro v. City of Pittsburgh*, 684 A.2d 232 (Pa.Cmwlth. 1996).

fire department. The policy provided for uninsured motorist coverage as required by the MVFRL. A fireman was injured in an accident in the course of his volunteer duties for the department and was unable to return to his job as an independent truck driver. He received worker's compensation benefits under the municipality's policy. He then filed a claim with the department's auto insurer seeking uninsured motorist benefits. The insurer objected and the matter went to arbitration under the Uniform Arbitration Act, 42 Pa. C.S. §§ 7301–7362. The question before the arbitrator was whether the fireman would be able to stack the $30,000 per vehicle uninsured insurance. A majority of the arbitrators approved that request, thus granting the maximum amount payable under the insurance policy of $180,000.

One of the issues the Supreme Court considered was whether the uninsured motorist coverage "should be reduced or 'set-off' by the amount of worker's compensation benefits" the fireman received in accordance with the terms of the policy. The Supreme Court, in noting the decisions of other jurisdictions, voided the exclusionary provision, stating as follows:

> The rationale of these courts is varied but certain common themes emerge: first, uninsured motorist coverage is paid for by a separate premium, and to give the uninsured motorist carrier a set-off based on the fortuitous existence of a collateral source would result in a windfall to the carrier; second, uninsured motorist coverage is mandated by statute and any variations from that statutory mandate should come from the legislature; third, workmen's compensation only covers a fraction of what tort damages would cover (e.g. workmen's compensation does not provide 100% of

wage loss coverage, nor pain and suffering, nor other consequential damages) and a dollar-for-dollar set-off does not recognize this reality; and fourth, there is no public policy against an individual purchasing additional uninsured motorist coverage to protect himself and his family against the shortfall, which could result from a dependency on workmen's compensation benefits.

*Id.*, 520 Pa. at 142–3, 552 A.2d at 1388.

However, the Court further noted that there was a new, post-injury, statutory basis that supported its conclusion that the exclusionary provision was invalid: At that time the then-recently adopted Section 1735 of the MVFRL[3] provided that "[t]he coverages required by this [Act] shall not be made subject to an exclusion or reduction in amount because of any worker's compensation benefits payable as a result of the same injury. 75 Pa.C.S. § 1735." 520 Pa. at 143, 552 A.2d at 1388.

However, as noted above, the General Assembly repealed Sections 1735 and 1737 of the MVFRL in 1993. After that repeal, the Supreme Court decided *Gardner v. Erie Insurance Company*, 555 Pa. 59, 722 A.2d 1041 (1999), in which the issue raised was "whether an employee's receipt of worker's compensation benefits relating to injuries sustained while driving a co-employee's automobile and arising out of wrongful third-party conduct bars him from recovering uninsured motorist benefits from the co-employee's insurance carrier." *Id.*, 555 Pa. at 61, 722 A.2d at 1041.

In that case, Gardner was driving a car owned by a co-employee when he was injured in an accident in the course of his employment. The other driver fled the scene. Gardner obtained worker's compensation benefits and also uninsured mo-

---

**3.** Added by the Act of February 12, 1984, P.L.    26.

torist benefits of $15,000 from his own insurer. Gardner then sought uninsured motorist benefits under the co-employee/owner's policy with Erie Insurance. Erie denied the request, and Gardner filed a declaratory judgment action. In that proceeding, Erie argued that Gardner's receipt of worker's compensation benefits precluded his subsequent receipt of benefits under his co-worker's insurance plan. Thus, the distinguishing factor between this case and *Gardner* is that in this case, Heller sought benefits from his employer's UIM policy, while in the *Gardner* case, the plaintiff sought UIM benefits from the owner of the car he was driving——a co-worker.

This distinction warranted the trial court in *Gardner* to consider provisions of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708, namely Section 205, 77 P.S. § 72, which pertains to the liability of fellow employees in a worker's compensation context, and provides that "if disability . . . is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability . . . for any act or omission occurring while such person was in the same employ as the person disabled . . . except for intentional wrong." The trial court in *Gardner* relied upon the decision of our Supreme Court in *Ducjai v. Dennis*, 540 Pa. 103, 656 A.2d 102 (1995), in which the Court held that an employee may not recover damages on a tort theory from a co-employee when the injured party is already receiving worker's compensation benefits. The trial court in *Gardner* opined that the narrow holding relating to the recovery of **tort** damages in addition to worker's compensation benefits was an immaterial distinction from the situation before it, where an employee seeks to recover not tort damages but rather money available under UIM third-party insurance

coverage. The insurance company in *Gardner* also posited that the General Assembly's repeal of Section 1735 provided sufficient authority to conclude that the legislature, by repealing that section had intended to make efficacious the previously prohibited worker's compensation exclusivity provision and to proclaim essentially that no policy reason existed for prohibiting such exclusionary provisions.

In addressing the insurer's reliance in *Gardner* upon these two points, the Supreme Court first referenced cases decided before the repeal of Section 1735 of the UIM, including *Selected Risks*. Those cases, the Court noted, involved employer or insurer reliance upon an exclusivity provision of Section 303(a) the Workers' Compensation Act, 77 P.S. § 481(a), which provides that

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees . . . entitled to damages in any action at law or otherwise on account of *any injury or death.*

The Supreme Court stated that:

In addition to reflecting the unitary scheme of compensation under the Act, this provision contains an immunity component, affording an employer immunity from common law liabilities in a manner similar to the limited grant of immunity afforded to co-employees pursuant to Section 205.

*Id.,* 555 Pa. at 65, 722 A.2d at 1043–4, n. 6.

The Court's analysis required a close reading of its earlier decision in *Ducjai,* as noted above, a case decided after the repeal of Sections 1735 and 1737. The Court in *Ducjai,* as noted by the *Gardner* Court, regarded the repeal of the sections as a reflection of the General Assembly's desire to "proclaim" the exclusivity of the Workers' Compensation Act and to effectuate a

desire to preclude an employee from obtaining a double recovery for a work-related injury. However, the *Gardner* court noted that *Ducjai* did not involve recovery of uninsured motorist insurance funds, but rather arose in the distinct context of a negligence suit brought against a co-employee. The Court noted that, even in *Ducjai*, the Court had recognized that Section 1735 did not in itself resolve the question of whether an injured employee could avail himself of both worker's compensation benefits and uninsured motorists benefits. The purpose of Section 1735 recognized by the Supreme Court in both cases was to limit the ability of insurance companies to use worker's compensation benefits as a set-off, "not to determine whether an insured has any claim to worker's compensation benefits and uninsured motorist benefits." *Gardner*, 555 Pa. at 66–7, 722 A.2d at 1044, quoting *Ducjai*, 540 Pa. at 112, 656 A.2d at 106.

Thus, the Court reasoned, because Section 1735 was not the source of authority for dual recovery, the General Assembly's repeal of the section could not be regarded as a revocation of the right to dual recovery. *Id.* However, because *Gardner* involved claims brought against a co-employee's insurer, the Court noted that Section 1737, before being repealed, reflected the authorization for claims, as in this case, against an employer's motor vehicle insurance, but was not relevant to a case involving claims against a co-worker's insurance company.

However, more to the point in this case, is the Court's discussion of the interplay between the MVFRL and the Workers' Compensation Act. The Court noted that the Act that repealed Sections 1735 and 1737 of the MVFRL represented a legislative attempt to alter the scheme for coordination of available benefits to an employee who is injured in an automobile accident.

Before the passage of that Act, the law (1) "expressly sanctioned" recovery from employer uninsured motorist plans, (2) Section 1722 of the MVFRL barred claimants in tort actions and uninsured motorist proceedings from recovering benefits obtained through worker's compensation benefits, and (3) Section 1720 precluded an employer or insurer from having a right of subrogation against any tort recovery. However, following the passage of Act 44, Section 1722 no longer requires a reduction of worker's compensation benefits from recovered tort or uninsured motorist benefits and Section 1720 does not prohibit an employer or insurer from seeking subrogation on the basis of worker's compensation benefits paid to an injured employee. In summary, the Supreme Court stated:

> Viewed in this context, the repeal of Sections 1735 and 1737 may be seen as an integrated aspect of these comprehensive changes, rather than as reflective of a specific legislative intent to preclude the dual recovery of worker's compensation and uninsured motorist benefits.

*Id.*, 555 Pa. at 68, 722 A.2d at 1045.

Finally, citing and agreeing with *Travelers Indemnity Company of Illinois v. DiBartolo*, 131 F.3d 343 (3d Cir.1997), the Court stated that

> Having found it clear that the ability of employees to obtain dual recovery of worker's compensation and uninsured motorist benefits was judicially recognized and independent of Sections 1735 and 1737, the *DiBartolo* court considered the repeal of those sections as irrelevant to the determination of whether the General Assembly intended to preclude a double recovery by an injured employee.

Although not controlling, we find this reasoning persuasive insofar as it concerns the limited implications of the re-

peal of Sections 1735 and 1737. We agree that, since Sections 1735 and 1737 did not create an exception to the exclusivity and immunity provisions of Section 303(a) and 205 of the Act, their repeal cannot be construed as evidencing an intent on the part of the General Assembly to eliminate the exception and require that such exclusivity or immunity should now always apply to preclude the receipt of uninsured motorist benefits. To the extent that the dictum in *Ducjai* suggests to the contrary, we take this opportunity to disavow it.

*Gardner,* 555 Pa. at 69–70, 722 A.2d at 1046. With this guidance from our Supreme Court we proceed to consider the issues presented.

Penn PRIME first argues that the trial court erred in concluding that the exclusionary provision of its policy with the Borough violates public policy. Penn PRIME asserts that the trial court reached the wrong result because there is no legislative mandate to require the provision of such benefits and because cost containment is a more dominant policy concern than that reflected in the requirement that an injured employee have the ability to seek benefits under both worker's compensation laws and through automobile insurance.

Penn PRIME first asserts that the MVFRL makes the purchase of UIM insurance optional, and also allows purchasers to reduce uninsured motorist insurance below the insured's bodily injury limits. Thus, Penn PRIME argues, this decision to allow such choices reflects the General Assembly's intent to permit flexibility in the purchase of such coverage. Accordingly, the argument goes, the Borough could have elected not to have UIM, but chose to have such insurance extend only to persons who are not eligible for worker's compensation benefits. Penn PRIME asserts that this is an all or nothing approach that makes little practical or policy sense. The point of this argument, obviously, is that, if the Borough had elected not to have UIM motorist insurance, this case would not even be here. However, Penn PRIME also contends that public policy would not support a scenario in which it would be required to pay benefits for which it is not compensated.

In resolving questions involving alleged void contract provisions on a public policy basis, the courts have set forth that

'Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest.' *Guardian Life Insurance Co. v. Zerance,* 505 Pa. 345, 354, 479 A.2d 949, 954 (1984) (citations omitted). It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in [declaring what is or is not in accord with public policy].' *Mamlin v. Genoe,* 340 Pa. 320, 325, 17 A.2d 407, 409 (1941) The phrase "public policy" has been used also when the courts have interpreted statutes broadly to help manifest their legislative intent.

*Paylor v. Hartford Insurance Co.,* 536 Pa. 583, 586-7, 640 A.2d 1234, 1235 (1994) (citations omitted).

The Supreme Court's most recent discussion regarding the interplay between the MVFRL and public policy considerations in the insurance context arose in *Pennsylvania National Mutual Casualty Company v. Black,* 591 Pa. 221, 916 A.2d 569 (2007). That case involved the question of whether "a 'set-off' provision in an automobile insurance policy was unenforceable as against public policy." 591 Pa. at 225, 916 A.2d at 571. As explained

by the Court, such provisions allow for a reduction of recovery available under one part of a policy where recovery has been made under another part of the same policy, for example, UIM insurance and bodily injury coverage. Briefly stated, in *Black,* the parents of Eric Black, who was a passenger who died in a fatal accident, sued the company that insured the driver, seeking benefits under the driver's bodily liability coverage and also sought coverage under the driver's underinsured motorist coverage provision, based upon the insufficiency of the insurance held by the driver of the other car involved in the accident. However, the driver's policy included a provision that defined underinsured motor vehicle in such a way as to exclude vehicles for which liability coverage was provided under the policy, and also included the subject "set-off" provision that reduced the limit of liability by any amount paid to an insured for the same accident.

The insurer in that case argued that the courts typically have not struck down insurance provisions on public policy grounds unless the subject provision conflicted with specific language in the MVFRL, and that the set-off provision did not conflict with statutory language, but rather furthered the policy goal of the Law to contain costs. The Court, citing a regulation of the Department of Insurance, first concluded that the set-off provision did not conflict with any provisions of the Law. The Court then opined that the next question required evaluation of two public policy considerations that are embodied in the Law: The concern to provide coverage for injuries sustained by an insured due to the negligence of an uninsured or underinsured motorist and the interest in dampening spiraling automobile insurance costs. The Court noted the distinction between an exclusion of benefits and the set-off provision at issue, to which the parties agreed in their contract, and which simply placed a cap on total coverage, and commented that to allow recovery under the plaintiff's theory would result in coverage for which the plaintiff had not paid premiums. Further, because the set-off furthered the objective of cost-containment, the Court concluded that the provision did not violate that public policy consideration.

The federal Court of Appeals in *Nationwide Mutual Insurance Company v. Cosenza,* 258 F.3d 197, 209 (3rd Cir.2001) noted many of the pronouncements Pennsylvania courts have espoused with regard to the purpose of the UIM, stating that "Pennsylvania courts have been especially attentive to the fact that UIM coverage is purchased 'to protect oneself from other drivers whose liability insurance purchasing decisions are beyond one's control.'" (Citation omitted.) Further, after the amendments to the MVFRL in 1990, our Supreme Court recognized that an insured who elects to purchase UIM coverage is really seeking to shift the risk of loss caused by an underinsured driver to his or her own insurer. *Cosenza,* 258 F.3d at 209, citing *Kmonk–Sullivan v. State Farm Mutual Auto. Insurance Co.,* 746 A.2d 1118 (Pa.Super.1999). Thus, when an insured has purchased UIM coverage, to disallow recovery could penalize insureds who did not create the risk leading to injuries and had no part in the negligent underinsured driver's insurance decisions. *Cosenza.*

In *Cosenza,* the federal court noted that courts have not universally held that provisions prohibiting dual recovery (of both liability and UIM benefits) are unenforceable. For instance, in cases involving a single tortfeasor rather than two tortfeasors and two separate insurance policies, courts have agreed that dual recovery exclusions were permissible, as compared to cases where a victim seeks both types of benefits under a single policy, in which

case the courts evaluate the policies on a case-by-case basis.[4] The Court stated: "The rationale behind UIM insurance is inapplicable in single tortfeasor cases, where injured parties can ensure that they have adequate coverage simply by purchasing adequate liability insurance. These are not cases where the victim is injured by someone whose liability insurance choices are beyond the victim's control." *Id.* at 212. We believe that this aspect of UIM exclusionary provisions is significant to the present case. Our Supreme Court has stated that the key question in analyzing these cases is whether the insured is attempting to change the liability insurance into UIM insurance. If so, then it is an attempt to convert and the prohibition should be upheld.

We reiterate the observations above, underlying Penn PRIME's argument, that there is a distinction between the present case and the post-amendment *Gardner* decision. This case arises out of an insurance policy that includes an exclusion of UIM benefits where worker's compensation benefits are available. *Gardner* involved no affirmative exclusion in the subject policy. Rather, the sole question was whether the exclusivity provisions of the Workers' Compensation Act precluded recovery under a third-party's UIM benefit coverage. There is no indication that the facts in *Gardner* involve an insurance policy that included a provision excluding from UIM coverage covered persons who also obtain worker's compensation benefits arising from the same set of facts.

While it is true that the Supreme Court in *Selected Risks* found such provisions violated public policy concerns, that decision was made by the Court before the

Amendments to the MVFRL made the purchase of UIM benefits optional. The Supreme Court has not considered this aspect of the MVFRL in the context of worker's compensation UIM exclusions.

Although not binding on this Court, the federal Court of Appeals has also considered a case in which it had to predict how our Supreme Court would decide the question of whether the MVFRL allows a corporation to waive UIM coverage for its employees under a company insurance policy. *Travelers Indemnity Company of Illinois v. DiBartolo*, 171 F.3d 168 (3rd Cir. 1999) (considering issues in appeal following decision on remand cited above). Citing *Paylor*, the federal court noted that the MVFRL reflects the public policy to control escalating insurance costs, a goal that would be thwarted if corporations were required to purchase UIM coverage for their company-owned vehicles. The court noted that individuals purchasing such insurance are permitted under the Law to elect to reject coverage for discrete members of their families, who themselves have no control over whether or not the insured opts to purchase such coverage. That DiBartolo was a third-party beneficiary of his employer's insurance contract was a fact that the court found irrelevant. As noted by the federal court, Pennsylvania courts, while not having had to decide the particular question of whether a corporation can waive UIM coverage, have concluded that the employer, not the employee, is the insured. *Caron v. Reliance Insurance Co.*, 703 A.2d 63 (Pa.Super.1997).

■ Thus, although *Gardner* does stand for the proposition that, where a liable party, or employer, has an insurance poli-

---

4. The Court in *Cosenza* noted that liability insurance is more expensive to purchase than UIM insurance, and that this is one reason why Pennsylvania courts have sometimes elected not to invalidate exclusions that "bar an insured from converting inexpensive UIM insurance into the more expensive liability insurance." *Id.* 258 F.3d at 211.

cy providing for UIM benefits, injured employees are not foreclosed by the exclusivity provisions of the Workers' Compensation Act from obtaining UIM benefits under a third-party's insurance policy, even after the repeal of Sections 1735 and 1737 of the Law. However, the Supreme Court has never evaluated that particular policy after the amendments allowing purchasers not to obtain UIM coverage where an insured has agreed in the insurance policy that UIM benefits are not available to persons who obtain worker's compensation benefits. In this case, if the employer had elected not to purchase any UIM coverage, we would not be engaging in this analysis. As Penn PRIME points out, the trial court's analysis results in an all-or-nothing scenario in which an insured must either elect UIM coverage that has no worker's compensation exclusion or forego the purchase of UIM entirely.

We repeat again that the *Gardner* decision is limited in application. As noted above, the true question in that case was distinct from that presented in this case. *Gardner* appears to stand for only the proposition that the exclusivity provision of the Workers' Compensation Act did not preclude an injured employee from obtaining UIM benefits when the third-party insured has opted to purchase such coverage. There was simply no question in *Gardner* concerning the right of an insured to purchase coverage limited in scope. Although *Selected Risks* involved the Supreme Court's decision to strike down a set-off provision that permitted the reduction of benefits paid based upon recovery of worker's compensation benefits, the Court based that decision on various factors that are not present in this case:

> [C]ertain common themes emerge: first, uninsured motorist coverage is paid for by a separate premium, and to give the uninsured motorist carrier a set-off based on the fortuitous existence of a collateral source would result in a windfall to the carrier; second, uninsured motorist coverage is mandated by statute and any variations from that statutory mandate should come from the legislature; third, workmen's compensation only covers a fraction of what tort damages would cover, (e.g. workmen's compensation does not provide 100% of wage loss coverage, nor pain and suffering, nor other consequential damages) and a dollar-for-dollar set-off does not recognize this reality; and fourth, there is no public policy against an individual purchasing additional uninsured motorist coverage to protect himself and his family against the shortfall which could result from a dependency on workmen's compensation benefits.

520 Pa. at 142–3, 552 A.2d at 1388.

We note primarily that in *Selected Risks*, a pre-amendment case, the Court relied in significant part on the previous statutory mandate that required insureds to purchased UIM coverage. Further, in this case we are not addressing the question of a potential windfall to an insurance carrier that under a policy is entitled to a set-off.

Thus, as directed by the Supreme Court we must consider whether either the MVFRL or the Workers' Compensation Act contains provisions that specifically prohibit the inclusion of an exclusion to UIM coverage based upon the receipt of worker's compensation benefits, and if not, whether legal precedent warrants a conclusion that the exclusion violates public policy. We note first that there are no specific provisions of either law that prohibit the exclusion of UIM coverage where an employee is able to obtain worker's compensation benefits. Second, we note that the legal precedent upon which the trial court and the Hellers rely, as dis-

cussed above, does not specifically address the situation presented. Although the Supreme Court in *Gardner* recognized the presently applicable statutory scheme as a new method by which injured employees may be made whole, that decision does not address the impact of the concurrent public policy pronouncement that insureds may elect not to obtain UIM insurance at all.

■ As legal precedents have established also that a Court should not act as a super-legislature in redrafting contract documents on the sole basis of outcomes that may be desired for the general good, and as the courts have also expressed a distaste for such action when a contracting party will be required to bear the loss of an unanticipated risk, and in the case of insurers, loss of premiums,[5] we believe that the conflicting policy considerations fall on the side of the insurer under the present circumstances, and conclude that the trial court erred in determining that the worker's compensation exclusion in the Borough's insurance policy contract with Penn PRIME was void as against public policy. Accordingly, we will reverse the trial court's decision and grant summary judgment in favor of Penn PRIME.

### ORDER

AND NOW, this 4th day of June, 2008, the order of the Court of Common Pleas of Venango County is reversed and summary judgment is hereby granted to appellants, Pennsylvania League of Cities and Municipalities t/d/b/a Penn Prime Trust a/k/a Pennsylvania Pooled Risk Insurance for Municipal Entities.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that the Court of Common Pleas of Venango County (trial court) erred in concluding that it is a violation of public policy to exclude from underinsured motorists (UIM) coverage a claim by anyone eligible for workers' compensation (WC) benefits. For the following reasons, I cannot agree.

On October 31, 2002, Frank D. Heller (Heller) was injured in an auto accident while working as a police officer for Sugarbrook Borough (Borough). The Borough paid WC benefits to Heller as a result of the accident. The company providing insurance for the other driver paid Heller the driver's policy limit of $25,000.

The Borough has UIM coverage up to $100,000 per person or per accident through the Pennsylvania League of Cities and Municipalities, t/d/b/a Penn Prime Trust (Penn PRIME). The Borough has WC coverage through the State Workers' Insurance Fund (SWIF), which has a subrogation lien on any UIM funds paid to Heller under the Borough's policy with Penn PRIME.

On April 23, 2004, Heller submitted a claim to Penn PRIME for UIM benefits. Penn PRIME denied the claim pursuant to a policy provision which states that the UIM coverage does not apply to "[a]ny claim by anyone eligible for [WC] benefits...." (Stipulations, No. 20, R.R. at 18a; Policy, ¶ V.B.3(e), R.R. at 51a.) Heller sought a declaratory judgment that the exclusion from UIM coverage of anyone eligible for WC benefits is invalid as con-

---

5. We note that the exclusion provision can be read to provide a benefit to the Borough, even if an employee's consequential injuries are not covered by worker's compensation bene-

fits: Employees who may be injured but are not *disabled* under the Act would apparently be entitled to obtain relief under this coverage.

trary to public policy. The trial court agreed, and Penn PRIME filed an appeal with this court.

My analysis begins with a brief historical review of the applicable law. In *Selected Risks Insurance Company v. Thompson*, 520 Pa. 130, 552 A.2d 1382 (1989), our supreme court held that a UIM policy issued by an insurer in 1981 was void as being contrary to public policy because it gave the insurer a set-off for WC benefits. Our supreme court gave four reasons for its holding but also pointed out that section 1735 of the new Motor Vehicle Financial Responsibility Law (MVFRL)[1] specifically states that UIM coverage "*shall not be made subject to an* **exclusion or reduction** *in amount because of any worker's compensation benefits payable as a result of the same injury.*" *Selected Risks*, 520 Pa. at 143, 552 A.2d at 1388 (bold emphasis added). Thus, when *Selected Risks* was decided in 1989, it was against public policy for UIM coverage to exclude anyone, or reduce benefits, based on the receipt of WC benefits.

The next year, by the act of February 7, 1990, P.L. 11, the legislature added section 1737 to the MVFRL.[2] Section 1737 stated that, notwithstanding anything in the WC statute, no employee who is otherwise eligible shall be precluded from the recovery of UIM benefits from an employer's motor vehicle policy. Thus, in 1990, it was against public policy for a UIM insurer to exclude from an employer's UIM coverage anyone who was eligible for WC benefits.

Also in 1990, the legislature amended section 1722 of the MVFRL[3] to state that a person who is eligible to receive WC benefits shall be precluded from recovering the amount of those benefits in a UIM proceeding. In other words, perhaps in reaction to the *Selected Risks* holding, the legislature allowed UIM insurers to take a set-off for WC benefits. Moreover, the legislature amended section 1720 of the MVFRL to state that a WC carrier shall have no right of subrogation with respect to certain benefits recovered under the MVFRL.[4] This court has noted that the obvious legislative intent was to place the ultimate burden for benefits on the WC insurance carrier rather than the auto insurance carrier. *Updike v. Workers' Compensation Appeal Board (Yeager Supply, Inc.)*, 740 A.2d 1193 (Pa.Cmwlth.1999).

The legislature altered this legislative scheme with the passage of the act of July 2, 1993, P.L. 190, known as Act 44. Act 44 repealed sections 1735 and 1737 of the MVFRL and repealed sections 1720 and 1722 of the MVFRL as they relate to WC benefits. Thus, under Act 44, an employee's recovery from a UIM carrier is no longer reduced by the amount of WC benefits; however, the WC carrier now has the right of subrogation with respect to the UIM benefits paid to a claimant. *Hannigan v. Workers' Compensation Appeal Board (O'Brien Ultra Service Station)*, 860 A.2d 632 (Pa.Cmwlth.2004), *appeal denied*, 582 Pa. 712, 872 A.2d 174 (2005). This court has explained that Act 44 shifted the ultimate burden for benefits from innocent employers and their WC

1. Section 1735 of the MVFRL, formerly 75 Pa.C.S. § 1735, was added by the act of February 12, 1984, P.L. 26, and was repealed by section 25(a) of the act of July 2, 1993, P.L. 190, known as Act 44.

2. Formerly 75 Pa.C.S. § 1737. Like section 1735 of the MVFRL, section 1737 was repealed by Act 44 in 1993.

3. 75 Pa.C.S. § 1722. Act 44 repealed section 1722 of the MVFRL only as it relates to WC benefits.

4. 75 Pa.C.S. § 1720. Act 44 repealed section 1720 of the MVFRL only as it relates to WC benefits.

# 373

carriers to responsible tortfeasors and the insurers who pay in their stead. *Id.*

In this regard, our supreme court pointed out in *Selected Risks* that WC benefits cover only a fraction of the damages available to an employee through UIM coverage. *Selected Risks.* By shifting the burden of paying from the WC carrier to the UIM carrier in cases where an uninsured or underinsured third party tortfeasor has caused a work-related injury, the legislature has enabled an employee to be made whole. Indeed, instead of recovering only medical expenses and loss of wages through WC benefits, an employee can recover **all** applicable damages from the carrier representing the uninsured or underinsured tortfeasor.

Of course, if a UIM carrier excludes from its UIM coverage anyone who is eligible for WC benefits, a WC carrier cannot assert a subrogation interest against UIM payments and an employee cannot recover all applicable damages. This defeats the two-pronged public policy of: (1) shifting the burden of paying from WC carriers to UIM carriers where an uninsured or underinsured third party tortfeasor causes a work-related injury; and (2) enabling the employee to recover all applicable damages.

Here, the Borough's WC carrier, SWIF, has a subrogation lien on any UIM benefits paid to Heller under the Borough's UIM policy with Penn PRIME. As a matter of public policy, Penn PRIME is to bear the burden of paying for Heller's work-related injury because the injury was caused by an underinsured third party tortfeasor. However, the effect of Penn PRIME's UIM policy exclusion for anyone eligible for WC benefits is to keep the burden of paying for the work injury on SWIF. Moreover, to the extent that Heller may have suffered damages other than medical expenses and loss of wages, the WC exclusion prevents Heller from being made whole. Because the WC exclusion in Penn PRIME's UIM policy prevents the fulfillment of public policy, I agree with the trial court that the WC exclusion is invalid.

Accordingly, I would affirm.