J-A01041-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM M. DERR AND KIMBERLY DERR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 1340 EDA 2019 |
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD | : | |

Appeal from the Order Dated April 30, 2019
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  2017-001949

BEFORE:   NICHOLS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED FEBRUARY 06, 2020**

Appellants, William M. Derr and Kimberly Derr, appeal from the order entered on April 30, 2019, sustaining the preliminary objections of Appellee, National Fire Insurance Company of Hartford, to Appellants' complaint challenging Appellee's denial of underinsured motorist ("UIM") benefits, after an automobile operated by Mr. Derr and owned by his employer, Radnor Township, was struck by another vehicle.  Appellants contend that the denial and disclaimer of coverage by Appellee violated the Pennsylvania Motor

_____

[*] Retired Senior Judge assigned to the Superior Court.

Vehicle Financial Responsibility Law ("MVFRL")[1] and the public policy of the

Commonwealth of Pennsylvania. After careful review, we affirm.

> Th[e trial c]ourt held a hearing on Appellee's Preliminary
> Objections to the Complaint on April 25, 2019 where Appellants
> and Appellee presented oral argument. Following the hearing, the
> [trial c]ourt issued the Order[4] that is the subject of this appeal,
> sustaining Appellee's Preliminary Objections and dismissing the
> Complaint. The [trial c]ourt's Order was based on the argument
> that Radnor Township was the named insured on the policy and
> therefore properly waived UIM coverage on behalf of Appellants.
> As a result of the waiver, Radnor Township was not charged for
> UIM coverage, did not pay for such coverage, and therefore the
> employees of Radnor Township operating fleet vehicles under the
> policy did not have such coverage. . . .
>
> > [4] Dated April 30, 2019.
>
> Appellants timely filed their Notice of Appeal on May 3, 2019. Th[e
> trial c]ourt issued a 1925(b) Order[5] requiring Appellants to submit
> a Concise Statement of Matters Complained of on Appeal within
> twenty-one (21) days of that Order. Appellants timely filed and
> served upon the Court their Concise Statement on May 28, 2019.
>
> > [5] Dated May 8, 2019.

Trial Court Opinion, filed June 10, 2019, at 3-4.

> Appellant presents the following issues for our review:
>
> 75 Pa.C.S.A. §1731 requires underinsured motorist coverage be
> provided on every motor vehicle insurance policy absent an
> insured's knowing and voluntary waiver. When a collision occurs,
> a permissive occupant of a vehicle is also deemed to be an insured
> under that vehicle's policy for underinsured motorist coverage. As
> such, when an employer maintains a fleet of vehicles (like a police
> department), must its insurance company require that the
> employer provide advance notice to all employees of its intent to
> reject mandatory [UIM] coverage?

---

[1] 75 Pa.C.S. §§ 1701-1799.

Appellants' Brief at 4.[2]

"In considering an appeal from an order granting preliminary objections in the nature of a demurrer, which is a question of law, our standard of review is *de novo*[.]" ***Heldring v. Lundy Beldecos & Milby, P.C.***, 151 A.3d 634, 641 (Pa. Super. 2016).

Preliminarily, we note that that, according to the MVFRL, all automobile insurance policies in Pennsylvania must carry UIM benefits unless this coverage is properly rejected:

> No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional. . . .
>
> Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:
>
> **REJECTION OF UNDERINSURED MOTORIST PROTECTION**
>
> By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a

---

[2] An *amicus curiae* brief has been filed in this appeal by the Pennsylvania Association for Justice in support of Appellants.

driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

_____

Signature of First Named Insured

_____

Date

75 Pa.C.S. § 1731(a), (c).

In the current action, Appellants contend that, when an insurance company, such as Appellee, "makes a mandatory offer of UIM coverage under 75 Pa.C.S. §1731(a) . . . to an employer that maintains a fleet of vehicles that its employees must use on a daily basis[,] . . . [p]ublic policy[3] says" that the

_____

[3] The MVFRL contains no explicit statement of purpose. **See** 75 Pa.C.S. §§ 1701-1799. Without any citation, Appellants state that "Pennsylvania's dominant and overreaching public policy [is] that innocent victims of automobile collisions should be compensated for their injuries[.]" Appellants' Brief at 14. However, the Supreme Court of Pennsylvania has found the public policy of the MVFRL to be more complicated and nuanced than that:

"Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." **Guardian Life Insurance Co. v. Zerance**, 505 Pa. 345, 354, 479 A.2d 949, 954 (1984) (Citations omitted). "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in [declaring what is or is not in accord with public policy]." **Mamlin v. Genoe**, 340 Pa. 320, 325, 17 A.2d 407, 409 (1941). . . . [T]he enactment of the MVFRL reflected a legislative concern for the spiralling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL.

- 4 -

MVFRL must "require that insurer to ensure that the employer notify its employees if it decides to reject UIM coverage on the fleet[.]" Appellants' Brief at 13. Appellants continue that "[t]he recognized policy underlying the MVFRL—maximization of recovery and the protection of the citizens of the Commonwealth--demands that notice of such a rejection of UIM benefits be provided to an insured's employees." *Id.* at 14. Appellants further argue that the trial court opinion in *Bielec v. American International Group, Inc.*, Court of Common Pleas of Philadelphia County Docket Number 01440 September Term 2014, filed December 5, 2016 ("*Bielec* TCO"), "properly

_____

*Paylor v. Hartford Insurance Co.*, 640 A.2d 1234, 1235 (Pa. 1994). The Pennsylvania Supreme Court later wrote:

> [T]he repeal of the No–Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101, and the simultaneous enactment of the MVFRL, reflected a legislative "concern for the spiralling consumer cost of automobile insurance and resultant increase in the number of uninsured motorists driving on public highways."

> *Rump v. Aetna Casualty & Surety Co.*, 551 Pa. 339, 710 A.2d 1093 (1998). The purpose behind underinsured motorist coverage is to protect the insured from the risk that a negligent driver of another vehicle will cause injury to the insured and will have inadequate insurance coverage to compensate the insured for his injuries. . . . [U]nderinsured motorist coverage serves the purpose of protecting innocent victims from underinsured motorists who cannot adequately compensate the victims for their injuries. That purpose, however, does not rise to the level of public policy overriding every other consideration of contract construction.

*Eichelman v. Nationwide Insurance Co.*, 711 A.2d 1006, 1008–10 (Pa. 1998).

recognized the significance of notice to the insured of the ramifications of the decision to reject underinsured motorist coverage." Appellants' Brief at 15.

Appellants provide us with no precedential case law or statue requiring that an insurance company must require that an insured employer provide advance notice to all of its employees of its intent to reject mandatory UIM coverage. **See generally id.** Pursuant to our own research, we find that the question of whether public policy requires that employers notify their employees when coverage is waived has never been analyzed by Pennsylvania appellate courts.

Turning to **Bielec**, the case relied upon by Appellants, **id.** at 15, the Court of Common Pleas of Philadelphia County[4] granted summary judgment in favor of a plaintiff-employee who filed for UIM coverage, because the court concluded that the employer's rejection of UIM coverage was void, as the form did not comply with statutory requirements.[5] **Bielec** TCO at 1. Specifically, the UIM coverage rejection form had a signature line at the bottom of the document, with at least three paragraphs between the language taken from 75 Pa.C.S. § 1731(c) and the signature line. **Bielec** TCO at 2-3. One of the interposing paragraphs described rejection of "stacked limits of underinsured motorist coverage"; accordingly, the court concluded that the form did not

---

[4] Although we are not bound by decisions of lower courts in Pennsylvania, we may use them for guidance if we find them persuasive. **Newell v. Montana West, Inc.**, 154 A.3d 819, 823 (Pa. Super. 2017).

[5] Appellants in the current action do not argue that there were any errors with the UIM coverage rejection form. **See** Appellants' Brief at 12-22.

comply with 75 Pa.C.S. § 1731. **Bielec** TCO at 5. The court added, "Even if [the employer's] UIM rejection were deemed valid on statutory text analysis, we believe an employer who fails to notify its employee driver that UIM coverage has been rejected is acting against public policy." **Id.** at 13. On appeal, this Court affirmed but provided no guidance on the public policy issue, stating: "In light of our disposition, we decline to address the public policy issues raised by the trial court's summary conclusion that 'an employer who fails to notify its employee driver that UIM coverage has been rejected is acting against public policy.'" **Bielec v. American International Group, Inc.**, No. 336 EDA 2017, unpublished memorandum at 12 n.4 (Pa. Super. filed December 26, 2017).

This identical issue concerning the appropriate application of "public policy" to 75 Pa.C.S. § 1731 has also been considered by the United States District Court for the Eastern District of Pennsylvania, which reached a conclusion contrary to **Bielec**.[6] Recently, in an unpublished memorandum, in **Morales v. Travelers Property Casualty Co. of America**, No. CV 17-5579, 2019 WL 653088 (E.D. Pa. February 14, 2019), the Eastern District of Pennsylvania was presented with the question of the intersection of Section

---

[6] "We may use decisions from other jurisdictions 'for guidance to the degree we find them useful and not incompatible with Pennsylvania law.'" **Newell**, 154 A.3d at 823 n.6 (quoting **Trach v. Fellin**, 817 A.2d 1102, 1115 (Pa. Super. 2003) (*en banc*)).

1731 and public policy. *Morales* was an insurance dispute in which the plaintiff contended that:

> summary judgment should be granted in his favor because (1) he was not given notice from his [former] employer that UIM coverage had been rejected, which would have given him an opportunity to purchase his own; and (2) the rejection form failed to meet the statutory requirements of 75 Pa. C.S.A. 1731(c).

*Id.* at *2. Like Appellants, the plaintiff in *Morales* relied upon the trial court opinion in *Bielec* to support his first argument. 2019 WL 653088 at *2. The defendants, the plaintiff's former employer and its insurance company, also filed for summary judgment, on the basis that the employer's use of the insurer's "rejection form to reject UIM coverage complied with § 1731(c), and that [the employer's] rejection of UIM coverage on behalf of its employees without notice to the employees does not contravene public policy." *Id.* at *3. The insurer added that "the public policy language" in *Bielec*'s trial court opinion "was mere dicta, as the case was decided based upon the additional language in the rejection form that the court found to have created an ambiguity." *Id.* at *4. Upon consideration of the plaintiff's public policy argument, the court stated: "The only support for Plaintiff's argument that public policy would support our granting summary judgment in his favor is the *Bielec* case. [The] discussion of public policy in the Common Pleas Court decision is arguably dicta, and was not a basis for the Superior Court affirming that decision." *Id.* at *5. Consequently, the federal court rejected the public policy argument advanced in *Bielec*, denied summary judgment in favor of

the plaintiff, and granted summary judgment in the defendants' favor. *Id.* at *5-*6.

Additionally, the Eastern District of Pennsylvania has found that employer's automobile insurance policies that only cover certain named individuals for UIM benefits but not all employees are valid. *See Wiley v. Universal Underwriters Insurance Co.*, No. CV 15-5943, 2017 WL 495794, at *4-5 (E.D. Pa. February 6, 2017) (memorandum) (system of insurance where the policyholder-employer rejected UIM benefits for employees but not for the employer's principals was valid under the MVFRL and was not void as a matter of public policy). Ergo, if it is not against public policy if some employees are not covered for UIM if UIM benefits are explicitly rejected by an employer, we may analogize that it is not against public policy if all employees are not covered for UIM if UIM benefits were explicitly rejected by an employer.

Furthermore, we find the case of *Byoung Suk An v. Victoria Fire and Casualty Co.*, 113 A.3d 1283 (Pa. Super. 2015), to be instructive. In it, this Court was asked to determine whether an automobile insurance policy provision which extended coverage to a "named driver only" was consistent with the MVFRL and public policy. *Id.* at 1292. This Court determined that the "provision of lost-cost, affordable policies in return for motor vehicle liability coverage of only the named driver . . . does not violate public policy." *Id.* Hence, *Byoung Suk An*, *id.*, stands for the notion that an insured may

reject some drivers of its vehicles from coverage and not violate public policy; to the extent that we may draw a parallel between **Byoung Suk An** and the issue at the center of the current action, we can infer that any insured, including an employer, may reject UIM coverage for any driver of its vehicles, including its employees. **See id.**

Pursuant to the above review of relevant case law, we conclude that the statement of the trial court in **Bielec** that "an employer who fails to notify its employee driver that UIM coverage has been rejected is acting against public policy" is an anomaly. **Bielec** TCO at 13. All other case law has either directly found that a rejection of UIM coverage by an employer for its employees is not against public policy or can be extrapolated to reach the same conclusion. **Byoung Suk An**, 113 A.3d at 1292; **Morales**, 2019 WL 653088 at *2-6; **Wiley**, 2017 WL 495794 at *4-5.[7] For the reasons set forth above, we affirm the trial court.

> We note that this ruling, like all of our rulings, [is] not be disposition-driven. We are bound by decisional and statutory legal authority, even when equitable considerations may compel a contrary result. We underscore our role as an intermediate appellate court, recognizing that "the Superior Court is an error correcting court and we are obliged to apply the decisional law as

---

[7] We do agree with Appellants that the reliance on **Travelers Indemnity Co. of Illinois v. DiBartolo**, 171 F.3d 168 (3d. Cir. 1999), by Appellee and reliance on **Salazar v. Allstate Insurance Co.**, 702 A.2d 1038 (Pa. 1997), in the *amicus curiae* brief are misplaced. Appellant's Brief at 20; Appellee's Brief at 9, 15-16, 18; *Amicus Curiae* Brief at 8-11. While both cases concerned the sufficiency of the notice for waiver of UIM coverage, neither directly addressed the public policy argument raised by the trial court in **Bielec** and by Appellants in the current action.

determined by the Supreme Court of Pennsylvania." ***Commonwealth v. Montini***, 712 A.2d at 769. "It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court." ***Moses v. T.N.T. Red Star Exp.***, 725 A.2d at 801.

***In re M.P.***, 204 A.3d 976, 986 (Pa. Super. 2019).

Accordingly, we affirm the order of the trial court sustaining Appellee's preliminary objections and dismissing Appellants' complaint in its entirety.

Order affirmed.

Judge Murray joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/6/20